In the Matter of Stanley H. GOLDSTEIN, A Member of the Bar of the District of Columbia Court of Appeals.

No. 83–653.

District of Columbia Court of Appeals.

Submitted Oct. 26, 1983.

Decided Jan. 9, 1984.

Glen C. Lewis, Washington, D.C., for respondent.

Before KERN, MACK and TERRY, Associate Judges.

PER CURIAM:

The Board on Professional Responsibility has submitted a report and recommendation that respondent be formally censured by the court for violation of the District of Columbia Code of Professional Responsibility DR 9–102(B)(4) and DR 6–101 (A)(3).[1]

[1] DR 9–102(B)(4) requires an attorney promptly to pay to his client, as requested, funds in his possession which the client was entitled to receive. DR 6–101(A)(3) proscribes neglect by any attorney of a legal matter entrusted to him.

Respondent has filed no exceptions to the Board's report. Rule XI, Section 7 requires this court to accept the Board's findings of fact in its report "unless they are unsupported by substantial evidence of record."

It is absolutely clear from the record that there is substantial evidence to support the Board's finding that respondent, the settlement attorney for the sale of certain premises, failed to pay $200 in an escrow account promptly to the seller, the complainant, upon receiving authorization (on more than one occasion) from the purchasers. There is also substantial evidence to support the Board's finding that respondent agreed to aid the complainant in trying to recover $420 from a merchant whom she paid for a wedding dress but then decided not to take. Ultimately, the complainant on her own obtained a refund of $335.

The Board declined to recommend in its report that this court suspend respondent, as the Hearing Committee had recommended in its report to the Board. Rather, the Board concluded that formal censure for respondent's violations was sufficient given its finding that: the respondent's delay in payment of the $200 in escrow "was done as a result of a judgment as to his company's ethical right to set off funds which he believed were owed to him by his client in another matter;" and, that respondent's "neglect of his client's claim [for the money she had paid for a dress she never took delivery of] over a period of months [was] without any resulting injury to his client."

The Board also noted, in concluding "suspension is not warranted in light of the evidence," that respondent had no prior disciplinary record during his ten years as a member of the Bar. We are bound by the Board's recommended disposition under the terms of Rule XI, Section 7 unless such recommendation "would foster a tendency toward inconsistent dispositions for compa-

rable conduct or otherwise would be unwarranted." Given the Board's findings and conclusion we are persuaded that formal censure of respondent in this case is appropriate.

In adopting the Board's report and recommendation, we are mindful that two members of the Board dissented from such report and recommendation.[2] The dissenters concluded that there "is substantial evidence in the record indicating that respondent misrepresented the status of the small claims case concerning the wedding dress to his client [the complainant]." Accordingly, the dissent would have upheld the Hearing Committee's conclusion that respondent not only did not pay over the escrow fund of $200 promptly to his client and did neglect the matter of obtaining a return of the client's payment for her wedding dress, but also that he misrepresented to her that he had filed an action to recover the money she had paid for the dress. Such misrepresentation was in the dissenters' view a violation of DR 1–102(A)(4). Accordingly, the two dissenters viewed respondent's conduct as meriting suspension rather than formal censure since in their view of the evidence the respondent had violated three disciplinary rules, not just two as the Board's majority concluded.

As to the charge that respondent had made a misrepresentation to his client, the majority of the Board reviewed the record and concluded that:

In light of [the client's] unresponsive answers to the direct questions which Bar Counsel asked her, the uncashed check which Respondent has denied receiving, and the overall ambiguities in the evidence referred to above, the Board is constrained to hold that the Committee's finding of clear and convincing evidence that the Respondent told her he had filed suit on her behalf is unsupported by sub-

---

**2.** Rule XI, Section 7, vests in this court "discretion" in such situation to appoint an attorney "to advocate the [Board's] minority view." The well-written dissent by the minority presents quite adequately in our view the issue dividing them from the Board's majority and hence we need not appoint an attorney to advance the minority's conclusion.

stantial evidence on the record as a whole.[3]

We are satisfied that the Board employed the correct standard of review in assessing the Hearing Committee's findings and conclusions. *In re Smith,* 403 A.2d 296, 302 (D.C.1979). We are further satisfied that there is support for the Board's conclusion that there was an insufficient showing that respondent misrepresented facts to the complainant concerning her claim for a refund for her dress. Accordingly, it is hereby

ORDERED by the court that respondent be, and hereby is, formally censured for violating DR 9–102(B)(4) and DR 6–101(A)(3).

*So ordered.*

---

3. Thus, complainant testified upon direct examination:

... I went back to the merchant and I couldn't get satisfaction. So, I brought the receipt, the letters back and forth, and the merchant's card, all together, and I gave it to Stanley, "Stanley, let's take this merchant to court." ... So he said, we'll take her to small claims court. ... About five or six months ... some time passed, and I called him, I said, what's the status, when is our court date; he said, I don't know. He said, I am waiting for a court date.

Later in her testimony, the following colloquy occurred between Assistant Bar Counsel and the complainant:

Q. Over what period of time did you inquire of Mr. Goldstein?

A. Over what period .... I think after six or seven months when nothing happened, I just finally gave up. I said I would handle it myself.

Q. Did he state he had filed a suit on your behalf?

A. He said, "We're waiting for a court date."