**In re John WALLER, Respondent.**

No. 86–774.

District of Columbia Court of Appeals.

Argued Jan. 29, 1987.

Decided April 22, 1987.

John Waller, Washington, D.C., pro se.

Elizabeth J. Branda, Asst. Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel, and Elizabeth A. Kohlman, Asst.

Bar Counsel, Washington, D.C., were on the brief, for the Office of Bar Counsel.

Before NEWMAN, BELSON and TERRY, Associate Judges.

NEWMAN, Associate Judge:

■ In its Report and Recommendation dated May 12, 1986, the Board on Professional Responsibility (hereinafter "the Board") found that John Waller had violated three disciplinary rules of the Code on Professional Responsibility: DR2–110(B)(4) (failing to withdraw from employment after being discharged), DR2–106(A) (charging a clearly excessive fee), and DR9–103(B)(4) (failing to deliver to a client papers which the client was entitled to receive). The Board recommended a sanction of 30 days' suspension. Waller challenges the Board's decision as to each of these violations, as well as the recommended sanction. We conclude that the Board's findings are supported by substantial evidence of record, and that the recommended sanction is not inconsistent with other dispositions for comparable conduct, or otherwise unwarranted. D.C. Bar R. XI § 7(3). We accordingly adopt the Report and Recommendation of the Board, which is appended to this opinion. However, we consider Waller's contentions as to the excessive fee violation to merit discussion, particularly in light of the dissenting opinion by a minority of the Board.[1]

Waller entered into a one-third contingency fee agreement with Beverly Houston to represent her in a personal injury action against her employer. Several months later, Houston discharged Waller. The Board assumed, without deciding, that the discharge was without cause; so do we. Up to that point, Waller had done negligible work on the case. Despite his discharge, Waller continued to work on Houston's case, requesting information from her physicians, and attempting to negotiate a settlement with her employer's insurance carrier. He succeeded in obtaining a settlement offer of $3500 from the insurance carrier, but did not relay the offer to Houston. Houston, meanwhile, had secured the services of another attorney.

Waller subsequently sent letters to Houston claiming fees of one-third of the insurance company's offer. He later explained at his disciplinary hearing that he thought he had substantially performed under his contract by negotiating a settlement with the insurance company, and that under this court's holding in *Kaushiva v. Hutter*, 454 A.2d 1373 (D.C.), *cert. denied*, 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983), his substantial performance entitled him to his contingency fee.[2] The Board disagreed, finding that although he had performed the services that he should have prior to his discharge, "the services were not substantial in furtherance of securing benefits for the client" as specified in *Kaushiva*. The contingency fee claimed by Waller was therefore, clearly excessive. Report, *infra* p. 754.

A minority of the Board dissented. The dissent argued that the majority had used a test of quantitative substantiality, or substantiality in absolute terms, which was not the meaning of "substantial performance" specified in *Kaushiva*. The dissent felt that by doing all he should have done up to

---

1. Because we agree with the Board's recommendation concerning respondent's failure to deliver to the client papers which the client was entitled to receive, we need not discuss the law concerning the attorney's retaining lien. We point out, however, that the fact that the fee demanded by Waller was clearly excessive facilitated the Board's consideration of the retaining lien issue. There can be no doubt that where the fee demanded is clearly excessive, counsel cannot properly retain an erstwhile client's papers until counsel's fee is paid. We need not consider here whether an attorney would be guilty of a disciplinary code violation if he or she should retain a client's papers upon asser-

tion of an attorney's lien for nonpayment of a fee which, although later found excessive, was not *clearly* excessive.

2. We make note of the fact that Waller twice claimed fees, of $3000 and $3500 respectively. Even if he legitimately thought himself entitled to a contingency fee of one-third of the proffered settlement offer, his claims considerably exceeded that amount. We agree with the Board that they were not asserted in good faith. *See* Report and Recommendation of the Board on Professional Responsibility (hereinafter "Report"), *infra* pp. 753–54.

the time of discharge, Waller had "substantially performed," so that he could legitimately claim one-third of the settlement proffered shortly after his discharge, or any other settlement offer made within a reasonable period after his discharge and attributable to his efforts. Dissenting Opinion, *infra* p. 756–57.

Urging upon us the view of the dissenting members of the Board, Waller would have us interpret "substantial performance" to mean only that the attorney has made the efforts which could be expected of him in the time before discharge, even if these efforts were negligible, and regardless of whether they benefited the client by contributing to the result finally obtained. Taking this view to its extreme, an attorney who entered into a contingency fee agreement, made a preliminary phone call for the client, then was discharged without cause immediately thereafter, would be entitled to his full fee if a settlement later resulted. We recognize that there are jurisdictions which have taken this position. *See, e.g., Dombey, Tyler, Richards, & Grieser v. Detroit, Toledo & Ironton Railroad Co.,* 351 F.2d 121, 127 (6th Cir.1965) (under Ohio law, discharged attorney may recover full contingency fee though he has done nothing whatever to earn his fee); *Goldberg v. Perlmutter,* 308 Ill.App. 84, 31 N.E.2d 333 (1941) (same). However, guided by our precedent and principles of equity, as well the usual meaning of "substantial performance" in other areas of contract law, we are led to a different conclusion.

In *Kaushiva,* we held that "an attorney who enters into a contingency fee agreement with his client, substantially performs, and is then prevented by his client from completing performance is entitled to the full amount specified in the fee agreement. Only where an attorney renders less than substantial performance will quantum meruit be the appropriate measure of damages." *Id.* at 1374.

▇▇▇ In *Kaushiva,* the attorney, engaged in connection with an arbitration matter, did, in fact, represent his client at three arbitration hearings before being discharged. In *Mackie v. Howland,* 3 App. D.C. 461 (1894), cited by us in *Kaushiva,* the attorneys had performed substantial services over several years in an attempt to collect amounts due on certain bonds, but were discharged shortly before payments were received, whereupon substitute counsel completed the transaction. In both of these cases then, the attorneys had performed extensive services in pursuit of the client's objective, services which contributed to the client's actual recovery. As the facts of these cases indicate, our use of the term "substantial performance" in *Kaushiva* in the context of contingency fee agreements between attorney and client, meant that the attorney must have performed valuable services contributing to the results finally obtained by the client. Where an attorney, before discharge, has performed only inconsequential services of little benefit to the client, even if these services were all that could have been expected of him, he may recover only in quantum meruit. *Friedman v. Harris,* 81 U.S.App. D.C. 317, 318, 158 F.2d 187, 188 (1946) (attorney who had merely filed suit entitled only to quantum meruit).[3]

This interpretation accords with the meaning of "substantial performance" in other areas of contract law, where the use of the term presupposes not only that the promisor has substantially performed his part of the bargain, but that the promisee has received substantial benefits from the performance. "[T]he right to recover on such theory depends on whether or not the adverse party has received, to all intents and purposes, all the benefits which he could reasonably anticipate receiving under the contract." 17A C.J.S. *Contracts* § 508, at 816 (1963) (citations omitted). *See Newcomb v. Schaeffler,* 131 Colo. 56, 279 P.2d 409 (1955) (en banc) (construction contract; substantial performance means that party "has received substantially the benefit he expected"); *Joray Mason Contractors v. Four J's Construction Corp.,* 61 Ill.App.3d 410, 18 Ill.Dec. 864, 378 N.E.2d 328 (1978)

---

**3.** We note that while we did not cite *Friedman* in *Kaushiva,* it is nonetheless binding on us.

*See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).

(construction contract; whether there has been receipt and enjoyment of the benefits is important factor); *In Re Kinney Aluminum Co.,* 78 F.Supp. 565 (S.D.Cal.1948) (employment contract; same).

Our view also finds support in the law of other jurisdictions. Although courts vary widely on the issue of the compensation due an attorney after discharge without cause, recovery of the full contingency fee is most likely in cases in which the attorney has, before discharge, fully performed,[4] substantially performed,[5] or contributed substantially to the results finally obtained by the client.[6] *Contra, Dombey, supra; Goldberg, supra.*

For these reasons, we subscribe to the view, implicit in *Kaushiva,* that unless the attorney has performed valuable services contributing to the benefit finally obtained by the client, he has not "substantially performed," and is only entitled to quantum meruit recovery. This was essentially the standard applied by the Board, which found, based upon substantial evidence of record, that the services performed by Waller were "not substantial in furtherance of securing benefits for the client."

We note that the Board did not base its conclusion on the *Kaushiva* rationale alone; neither do we. This is not a case where there was an honest and reasonable dispute as to "substantial performance" under *Kaushiva.* As the Board points out at pages 753–54 of the attached Report, Waller's shifting fee demands demonstrates that he was not in good faith in his assertion that he was entitled to his contingency fee pursuant to *Kaushiva.* We agree.

4. *MacInnis v. Pope,* 134 Cal.App.2d 528, 285 P.2d 688 (1955); *Milton Kelner, P.A. v. 610 Lincoln Rd., Inc.,* 328 So.2d 193 (Fla.1976); 7A C.J.S. *Attorney & Client* § 289, at 538 & cases cited n. 81 (1980).

5. *Farrar v. Kelly,* 440 So.2d 939, 941 (La.Ct.App. 1983) (attorneys who brought suit and obtained judgment discharged before judgment signed).

6. *McGowan v. Parish,* 237 U.S. 285, 299, 35 S.Ct. 543, 549, 59 L.Ed. 955 (1915) (services of discharged attorneys of great value in securing to client the right to recovery); *Werner v. Biederman,* 64 Ohio App. 423, 28 N.E.2d 957 (1940)

Accordingly, it is ORDERED that Waller shall be suspended from the practice of law in the District of Columbia for thirty days, effective thirty days from the date of this opinion.

## DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Bar Docket Number: 459–84

In the Matter of: John Waller, respondent.

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter is before the Board on Professional Responsibility for review of the report of Hearing Committee Number Seven ("the Hearing Committee"), which conducted an evidentiary hearing on July 17, 1985.

### I. BACKGROUND

Ms. Beverly Houston met with Respondent John Waller on April 28, 1982, seeking legal assistance with regard to personal injuries that were sustained when she slipped on a wet floor while on a job assignment. Ms. Houston entered into a one-third contingency fee agreement with Respondent to represent her in her "claim for damages for injuries received on or about April 26, 1982." Bar Exhibit 1. At the April 28 meeting, Ms. Houston asked Respondent to represent her in a lawsuit against whomever was responsible for the wet floor on which she had slipped. Ms. Houston was unaware of any rights she might have had under Worker's Compensation. At their meeting, Respondent did not

(attorney had done a good portion of the work in obtaining signatures to an agreement); *Chandler v. Harrison,* 4 S.W.2d 604 (Tex.Civ.App. 1928) (attorney discharged after obtaining settlement but before settlement contract had been drawn up); *Blanchard & Blanchard v. Foti,* 105 So.2d 275 (La.Ct.App.1958) (attorneys who filed suit and obtained judgment discharged before execution); *Doucet v. Standard Supply & Hardware Co.,* 250 So.2d 549 (La.Ct.App.1971) (attorney discharged because client was dissatisfied with settlement offer obtained).

advise Ms. Houston of her rights under Worker's Compensation.

In May 1982, Ms. Houston telephoned Respondent, inquiring as to whether she could obtain Worker's Compensation. Respondent stated that obtaining Worker's Compensation benefits would not be worth his time.

In August 1982, Ms. Houston telephoned Respondent, requesting that he seek Worker's Compensation benefits for her. Respondent stated that he would pursue only the third-party claim.

Ms. Houston wrote Respondent on August 10 and 20, 1982, discharging him as her lawyer and requesting that he return her papers. Although Ms. Houston discharged Respondent because he would not pursue the Worker's Compensation claim, she did not state in her letters to Respondent her reason for discharging him. Respondent urged that he had not been discharged for cause, and that thus, Ms. Houston was required to reach an agreement with respect to his fee before the discharge was effective.

Respondent communicated with Ms. Houston three times after his discharge, indicating that he was still representing her. After Respondent had been discharged, he also wrote to Ms. Houston's doctor requesting a medical report. In addition, he submitted evidence of Ms. Houston's damages to the third party carrier after his discharge. Finally, after his discharge, the third party carrier communicated to Respondent a settlement offer, which Respondent never communicated to Ms. Houston or her new attorney.

Respondent never returned Ms. Houston's papers. He asserted a retaining lien on the papers and an attorneys fee charging lien to Ms. Houston and the third party carrier. The amount that Respondent claimed varied.

Meanwhile, Ms. Houston retained a new attorney, Mr. George Schmeidigan, to assist her with respect to her claims for injuries sustained from her fall. Mr. Schmeidigan obtained for Ms. Houston Worker's Compensation benefits and a $40,000 judgment from a civil suit. The third party carrier placed Respondent's name on the settlement check because of Respondent's asserted lien, which caused a delay in the proper distribution of the settlement.

The Hearing Committee concluded that: (1) Respondent had violated DR2–110(B)(4) by failing to withdraw from employment after he was discharged; (2) Respondent had violated DR9–103(B)(4) by failing to deliver to his client papers which his client was entitled to receive; and (3) Respondent had violated DR2–106(A) by charging a clearly excessive fee.* The Hearing Committee recommended that the Court publicly censure Respondent.

## II. THE VIOLATIONS

### A. DR2–110(B)(4): Failure to Withdraw.

Bar Counsel alleged, and the Hearing Committee found, that Respondent failed to withdraw from employment after his client discharged him. Respondent stated to Ms. Houston that he was still representing her on three separate occasions after she had discharged him. Respondent also communicated with Ms. Houston's doctor and to the third party carrier as Ms. Houston's attorney after his discharge. Respondent contended that Ms. Houston could only discharge him for cause or after a fee agreement was reached.

The Board agrees with the Hearing Committee's findings and conclusions with respect to Respondent's failure to withdraw after his discharge. A client has an absolute right to discharge an attorney at any time. Moreover, a client need not demonstrate cause prior to discharging an attorney. The reasons for the discharge, however, may affect the fees owed to the attor-

---

* The Hearing Committee found that Bar Counsel had failed to establish by clear and convincing evidence that Respondent had violated DR7–101(A)(1) by intentionally failing to seek the lawful objectives of his client because Bar Counsel failed to establish that Respondent agreed to represent Ms. Houston in her Worker's Compensation claim. H.Comm.Rpt. 6–9. The Board affirms this finding.

ney. *See Kaushiva v. Hutter*, 454 A.2d 1373 (D.C.), *cert. denied*, [464 U.S. 820], 104 S.Ct. 83 [78 L.Ed.2d 93] (1983).

Respondent's communications concerning Ms. Houston with her doctor and the third party carrier after his discharge by Ms. Houston evidence his failure to withdraw from employment in violation of DR2–110(B)(4). The Hearing Committee credited Ms. Houston's testimony that she had discharged Respondent and rejected Respond's contrary testimony. The Board concludes that the record contains clear and convincing evidence that Respondent violated DR2–110(B)(4).

### B. *DR2–106(A): Charging an Excessive Fee*

Bar Counsel alleged, and the Hearing Committee found, that Respondent charged a clearly excessive fee. Respondent claimed at different times that his fee was: 1) $3,500 based on one-third of the amount that the third party carrier had offered; 2) $3,000 based on quantum meruit; 3) and one-third of any settlement. Respondent testified that his claimed fee was only a negotiating position. H.Comm.Rpt. 4 and 9.

Respondent relied on the *Kaushiva* decision in determining his fee.** In *Kaushiva*, the court stated that "an attorney who enters into a contingency fee agreement with his client, substantially performs, and is then prevented by his client from completing performance is entitled to the full amount specified in the fee agreement." 454 A.2d at 1374. The court further stated "only where an attorney renders less than substantial performance will quantum meruit be the appropriate measure of damages." *Id.* The *Kaushiva* court held that the attorney was entitled to his contingency fee. The attorney in that case had represented his client at three days of arbitration hearings and was drafting a final brief concerning the arbitration when his

client discharged him due to a personality conflict.

In *Kaushiva*, the court cited in support of its holding *Mackie v. Howland*, 3 D.C. App. [App.D.C.] 461 (1894). *Mackie* involved an attorney who was authorized by a representative of an estate to collect from Venezuela monies due on bonds. A contingent fee arrangement was agreed to. The collection took many years during which time the attorney had performed services of great value in attempting to collect the monies. The attorney was discharged without cause shortly before the money was received. The court held that the discharged attorney was entitled to the contingent fee because the new attorney had done little toward collection of the monies and the discharged attorney had substantially performed.

A more recent case from this jurisdiction than *Mackie*, not cited in *Kaushiva*, is *Friedman v. Harris*, 81 U.S.App.D.C. 317, 158 F.2d 187 (1946). In *Friedman* the attorney was hired to file a personal injury suit under a contingent fee contract. He was discharged by the client, although it was unclear whether he was discharged before or after the suit was filed. The court reversed because the facts were unresolved as to when the attorney was discharged. The court stated, however, that the discharged attorney was entitled only to the value of his services; "otherwise his client's right to choose her own lawyer would have little practical value." 158 F.2d at 188.

*Friedman* and *Kaushiva* can be read together. *Friedman* stands for the principle that an attorney discharged without cause who has not substantially performed is not entitled to recover under the contract but only is entitled to quantum meruit.

Assuming that Respondent in the instant case was not discharged for cause, the issue is whether Respondent substantially performed.*** While Respondent per-

---

** Respondent admitted that if he was not entitled to recover under his contingency fee agreement pursuant to *Kaushiva*, then his claimed fee was excessive. H.Comm.Rpt. 9.

*** There is no need for the Board to determine whether Respondent was discharged for cause because the Board finds that he did not substantially perform and that thus, he is not entitled to the one-third contingency fee.

formed the services that he should have prior to his discharge, the services were not substantial in furtherance of securing benefits for the client. *See Mackie, supra; Friedman, supra.* Thus, Respondent was not entitled to a one-third contingency fee.

In addition, Respondent's claim of a $3,500 fee based on one-third of the amount that the third party carrier had offered was improper. Respondent's negotiations, which were allegedly made on behalf of Ms. Houston, resulted in the third party carrier's settlement offer. However, these negotiations occurred after Ms. Houston had discharged Respondent. Accordingly, Respondent had no authority to enter into such negotiations on behalf of Ms. Houston, who was no longer his client.

Further, the Board concludes that Respondent's actions and testimony demonstrate that he did not in good faith assert that he was entitled to a one-third contingency fee pursuant to the *Kaushiva* case. Respondent claimed varied fees and then asserted that the amounts were only a negotiating position. For these reasons, the Board affirms the Hearing Committee's conclusion of a violation of DR2–106(A).

### C. *DR9–103(B)(4): Failure to Deliver Client's Papers*

Bar Counsel alleged, and the Hearing Committee found, that Respondent improperly asserted a lien on his client's papers, violating DR9–103(B)(4) by failing to deliver to the client her papers after requested to do so. The Board agrees.

An attorney generally has a right to assert a retaining lien on his client's property to secure his fee for professional services. *See generally In re Hines*, 482 A.2d 378 (D.C.1984), citing, Grabowsky, "Attorney's Liens," *District Lawyer*, April 1978, at 6. The right, however, is not absolute. *See* D.C. Legal Ethics Committee Opinion No. 59 (an attorney's right to assert a retaining lien must be balanced against the attorney's ethical responsibilities to take reasonable efforts to not prejudice the client). While Legal Ethics Opinion No. 59 does not directly address an excessive fee restriction on asserting a retaining lien, it does state, "Thus, for purposes of considering the pro-

priety of the actual assertion of a retaining lien, we must assume that the fee question is reasonable. . . ." Thus, by implication, the Opinion states that the claim of an excessive fee restricts the right to assert a lien.

The Board has concluded that Respondent charged an excessive fee. The Board further concludes that Respondent's assertion of a retaining lien to secure an excessive fee constituted a violation of DR9–103(B)(4).

### III. SANCTION

The Board agrees with Bar Counsel and the Hearing Committee on the findings and violations, but we believe that appropriate sanction should be a 30–day suspension. Respondent violated DR2–110(B)(4), DR2–106(A) and DR9–103(B)(4) with respect to one client in one case. Yet we find his conduct more serious than that of the Respondent in *In re Goldstein*, 471 A.2d 267 (D.C.1984), where the sanction was a public censure. In the instant case, Respondent's misconduct was motivated by his desire to obtain an optimal fee situation for himself, irrespective of the best interests of his client. While Ms. Houston did receive Worker's Compensation benefits and a civil judgment through the efforts of her new attorney, she was delayed in collecting on the civil judgment due to Respondent's improperly asserted lien.

We find Respondent's self-serving behavior in continuing to represent himself as Ms. Houston's attorney particularly egregious. He was properly discharged, yet he attempted to negotiate a settlement in her behalf and without her knowledge which might have resulted in a larger fee for himself. This goal was pursued at peril to his client's interests. Respondent's prior discipline also was considered in determining the appropriate sanction. On October 27, 1981 Respondent received an informal admonition for violations of DR6–101(A)(3) (neglect), DR1–102(A)(5) (conduct prejudicial to the administration of justice), and DR7–102(A)(1) and (2) (threatening legal action for the purpose of harassment and knowingly advancing an unwarranted

claim). While the conduct underlying Respondent's prior informal admonition differs from the conduct at issue here, it does indicate a pattern of manipulation and general unprofessional behavior. Respondent does not appear to recognize his conduct as unethical. We believe the public must be protected from such behavior.

Accordingly, the Board recommends that the Court enter an order suspending Respondent for a period of thirty days.

BOARD ON PROFESSIONAL
RESPONSIBILITY
By: /s/ Dr. William Alexander
DR. WILLIAM ALEXANDER

Date: May 12, 1986

All members of the Board concur in this Report and Recommendation, except for Mr. Wilson, who has filed a separate dissenting opinion, joined by Mr. Foster and Mr. Carter.

### DISSENTING OPINION

The issue that divides the Board in this case concerns the allegation that Respondent attempted to charge a "clearly excessive fee" in violation of DR2–106(A). Resolution of this issue revolves around the following: (1) the legal significance of the fact that Respondent in this case had performed all that could reasonably be expected of him up until the time he was discharged by his client without cause; (2) an interpretation of the court's opinion in *Kaushiva v. Hutter,* 454 A.2d 1373 (D.C.), *cert. denied,* 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983); and (3) the legal standard in a disciplinary proceeding applicable

to establishing that a fee is "clearly" excessive in the context of a contingent fee arrangement and a subsequent settlement offer. All of these key points involve questions of law.

At the outset, the dissenting members of the Board concur in the majority's view that a client has an absolute right to discharge an attorney at any time, with or without cause. However, where an attorney is discharged without cause, as was the case here,[1] the general rule is that the discharged attorney is entitled to an appropriate fee as of the time of discharge.

In this case, Respondent was retained in April 1982 by Ms. Houston in a personal injury case, and he was subsequently discharged by Ms. Houston in August 1982. The "primary reason [for the discharge] was that Mr. Waller [Respondent] was not pursuing a Workers' Compensation claim." Hearing Committee Report, p. 3. However, it is undisputed that "the written attorney-client [contingent fee] agreement does not provide for representation of the claim" for Workers' Compensation; that "neither party discussed Workers' Compensation" in the initial meeting where Respondent was retained; and that "at the end of such meeting both parties believed the representation was limited to the third party claim" for personal injury. *Id.* at 8.

Moreover, the Hearing Committee also determined to credit Mr. Waller's testimony "that he did not believe it to be in Ms. Houston's interest to pursue a Workers' Compensation claim ... and advised her against it."[2] In light of these facts, both

---

1. The client in this case preferred to have an attorney who would pursue both her workmens compensation claims as well as her tort remedies, as she had every right to. On the other hand, the record shows that Respondent was not hired to pursue the workmens compensation claim and clearly stated that he would not do so when asked. Respondent was equally free to decline employment that he did not care to undertake. Respondent was discharged "without cause" in the sense that his discharge did not come about as a result of any neglect or mistake on his part but simply because the client preferred to have one lawyer who would pursue all of her claims at once.

2. Hearing Committee Report, p. 8. Ms. Houston's primary personal injury claim was complicated by the fact that she was employed by Logan Temporaries in Rosslyn, Virginia and was sent on assignment to the District of Columbia as a personnel consultant to Ziff-Davis Publishing Co., where she suffered personal injuries as a result of slipping on a wet floor in the ladies room. Thus, the personal injury occurred in the District of Columbia, whereas Ms. Houston's direct employer was located in Virginia. Moreover, as Respondent pointed out to Ms. Houston, any recovery from the insurance carrier in the primary negligence case might be subject to being offset by any payments received from Workers' Compensation.

the majority and dissenting members of the Board agree that Respondent's fee should be evaluated on the basis that he was discharged without cause.

As set forth in the majority's report: Respondent claimed at different times that his fee was: (1) $3,500 based on one-third of the [settlement] amount that the third party [insurance] carrier had offered; (2) $3,000 based on a quantum meruit; and (3) one-third of any settlement.

Majority Opinion, p. 750. The Hearing Committee found, and the Board's majority agrees, that Respondent performed all services that were reasonably expected of him up until the time of his discharge, although such services were "minimal." Hearing Committee Report, p. 4.

Respondent testified that his claim for one-third of a settlement offer was based on his reading of *Kaushiva*, where the Court of Appeals ruled:

We hold that an attorney who enters into a contingency fee agreement with his client, substantially performs, and is then prevented by his client from completing performance, is entitled to the full amount in the fee agreement. Only where an attorney renders less than substantial performance will quantum meruit be the appropriate measure of damages.

454 A.2d at 1374. In *Kaushiva*, the attorney was retained on September 20 under a contingent fee agreement and was discharged on November 12 without cause. During this interval, the attorney had represented his client in arbitration hearings on three separate days. On the date of discharge, the next step in the arbitration proceeding was the submission of post-hearing briefs on December 14, which the attorney was prevented from doing as a result of the discharge. More than one month after the attorney's discharge, an arbitration award for a substantial amount was made in favor of the discharged attorney's client. The *Kaushiva* court concluded that the discharged attorney had "substantially performed" and was therefore entitled to receive the *full amount* of the contingent fee, even though he had not prepared or filed the additional briefs required in the arbitration proceeding.

In this case, the majority of the Board acknowledges that "Respondent performed the services he should have [performed] prior to his discharge." However, the majority characterizes those services as "not substantial," and on that basis concludes that the claimed fee was "clearly excessive."

The majority thus interprets *Kaushiva* as prescribing a test of *quantitative substantiality* on an absolute scale, and since Respondent's services prior to discharge were not quantitatively substantial in absolute terms, the majority concludes that he therefore was "not entitled to the one-third contingency fee." Majority Opinion, p. 751. The majority's interpretation places a gloss on *Kaushiva* that is more rigid than is inherent in the more flexible "substantially performed" standard adopted by the court, especially as applied to the facts of this case.

As the majority recognizes, two of the fees that Respondent claimed, both said to be "clearly excessive," were tied directly to a possible *settlement, i.e.,* the settlement actually offered by the insurance carrier or "any other settlement amount."[3] The initial settlement offer from the insurance carrier was on the table shortly after Respondent's discharge. Since Respondent had done all he should have done up to the time of his discharge, a claimed fee of one-third of this proffered settlement is not frivolous under *Kaushiva*. If the case had been settled by his client for the amount then offered within weeks of Respondent's discharge, Respondent would have "substantially performed" within the meaning of *Kaushiva*, or at least Respondent could have reasonably so believed. The same would be rue for any other settlement offer made within a reasonable period after Re-

---

3. Majority Opinion, p. 750. The third basis on which Respondent claimed a fee of $3,000 was said to be on the basis of quantum meruit. *Id.*

spondent's discharge and not attributable to substantial services of replacement counsel.

When Respondent and his client entered into a contingent fee arrangement, Respondent was immediately placed in an "at risk" position. He was obligated to pursue his client's claim, which he did up until the time of discharge, with the risk that the case might require a large amount of effort and could result in no recovery for the client and therefore no fee whatsoever. Conversely, Respondent was clearly entitled to one-third of any settlement accepted by his client at any time after entering into the contingent fee agreement, even if settlement had occurred within days (or even hours) after the contingent fee agreement was made and even if Respondent had then devoted only an hour or so to the case. Such are the inherent risks, and possible rewards, of a contingent fee arrangement.

The majority's overly mechanical interpretation of *Kaushiva*, as imposing a quantitative substantiality test, tends to focus attention on the question whether the Respondent was *actually* entitled to a fee of the claimed amount. A disciplinary proceeding, however, is not the proper forum in which to decide the actual amount of a disputed fee. Rather, the precise question before the Board is whether Respondent's assertion of entitlement to a one-third fee was so wholly devoid of reason as to make it "clearly excessive" and therefore an ethical violation, *i.e.*, whether he knew, or ought to have known, that the claimed fee was clearly beyond any amount permissible under *Kaushiva*.

When an attorney with a contingent fee agreement has performed all that could be reasonably expected of him at the time of discharge and thereafter claims one-third of a settlement offer made shortly after his discharge, the dissenting members of the Board believe that Bar Counsel must prove by clear and convincing evidence that the attorney's claimed fee is clearly without any basis and therefore "clearly excessive." That Bar Counsel has not done in this case.

The majority's approach also under-emphasizes the fact that Respondent was clearly entitled to a fee of some amount and that the claimed amount could not be "clearly excessive" except by reference to the permissible amount. Attorneys with contingent fee arrangements typically place a "value" on a case in terms of a prospective settlement offer from the other side. Essentially the Respondent here claimed a fee based on the perceived "value" of the case in light of a settlement offer that was on the table shortly after his discharge.

Perhaps the most troubling aspect of this case is that the settlement offer, on which Respondent based his one-third claim, may have been triggered by conduct that was itself unethical. Respondent contacted the insurance company on August 19 and obtained the settlement offer on September 7, well after his discharge on August 10. He thereby violated DR2–110(B)(4) (failure to withdraw) as the Board unanimously agrees. We have difficulty with the notion that Respondent's unethical conduct in pursuing the insurance company after his discharge may have contributed to the very settlement offer on which he bases his asserted fee. However, we believe that the issue, properly framed, is whether Bar Counsel has proved by clear and convincing evidence that Respondent knew or should have known that he had no basis for asserting his claim to the one-third fee. It is not clear that Respondent solicited the offer that he obtained from the insurance company, and in any event, he did not pursue the settlement offer or try to persuade Ms. Houston to accept it. The issue is not free from doubt, and therefore, exactly because of those doubts, we conclude, that Bar Counsel has not proved his case by clear and convincing evidence.

The Board's majority finds support for its position concerning the unreasonableness of Respondent's claimed fee in Respondent's testimony to the effect that the claimed "amounts were only a negotiating position." Majority Op. at p. 751. We disagree. Respondent's willingness to negotiate, especially when coupled with the fact that his former client was then repre-

sented by competent replacement counsel, is equally consistent with the inference that Respondent was acting in good faith. The evidence may tend to show that Respondent was reasonable and flexible on the amount of his fee.

Accordingly, the evidence in this case is not sufficient to prove that Respondent knew, either actually or impliedly, that he was seeking a "clearly excessive fee" under *Kaushiva.* We believe that the same conclusion also applies to the other basis on which Respondent requested a fee, *i.e.*, a fee of $3,000 based on quantum meruit. Since Respondent at the same time was asking for $3,500 based on one-third of the initial settlement offer from the insurance carrier, a fee of $3,000 asserted to be on quantum meruit is not, without more, so untenable under *Kaushiva* as to warrant an inference of bad faith in an ethical context.[4]

Finally, we believe that the majority has not given due recognition to the inherent uncertainty in ascertaining the dividing line between a disputed fee that raises an ethical question under the Disciplinary Rules and one that should be resolved as a contract matter. *Fletcher v. Krise*, 120 F.2d 809 (D.C.Cir.) *cert. denied*, 314 U.S. 608, 62 S.Ct. 88, 86 L.Ed. 489 (1941) (the rule permitting an attorney recovery for the reasonable value of his services is based on quasi-contract); Wisconsin Op. E–82–5 (dispute over amount of fee payable to a discharged attorney with a contingent fee arrangement does not raise an ethical issue); Kentucky Op. E–269 (same); Philadelphia Op. 80–92 (same). When this uncertainty is combined with Board Rule 10.4, requiring alleged disciplinary violations to be established by "clear and convincing evidence," Bar Counsel necessarily has a difficult burden to carry in proving a "clearly excessive fee" in the context of a contingent fee arrangement and a settlement offer made shortly after the attorney's discharge without cause. We do not believe that burden has been met here, and accordingly, the dissenting members of the Board recommend that the court should find no violation of DR2–106(A).

If there is no "clearly excessive fee" as required for a violation of DR2–106(A), then the majority's conclusion that Respondent violated DR9–103(B)(4) (failure to deliver client's papers) must also fall. An attorney generally has a retaining lien on client's papers or other property to secure the attorney's fee for professional services. Respondent in this case was obviously entitled to a fee of some amount, and he was not paid any amount. The majority opinion is predicated on the legal theory that Respondent forfeited his otherwise valid lien by asking for the allegedly "clearly excessive fee." If the court agrees with the dissent that the record does not sustain a finding of a clearly excessive fee, then there will be no need to consider the majority's legal theory. Indeed, in the absence of an excessive fee, the majority apparently agrees that Respondent was entitled to assert a retaining lien, especially where, as here, the retained papers were easily replaced and the lien did not unduly obstruct or interfere with replacement counsel's ability to present the client's cause. Majority Opinion, pp. 751–52.

If the alleged violations of DR2–106(A) and DR9–103(B)(4) are both eliminated, this case is reduced to a single violation of DR2–110(B)(4) (failure promptly to withdraw), and while a short suspension might possibly be at the outer limits of an appropriate sanction, public censure is the sanction recommended by the undersigned members of the Board.

/s/ J. Randolph Wilson

J. RANDOLPH WILSON

Vice Chair

Mr. Foster and Mr. Carter join in this Dissenting Opinion.

Dated: May 12, 1986.

---

**4.** As the Hearing Committee noted, Respondent was in error when he referred to $3,500 as being one-third of the settlement, but Respondent was clear he was claiming only one-third of the amount of the settlement. Hearing Committee Report, p. 4.