Polly GREENBERG, Appellant,

v.

Robert J. SHER, Appellee.

No. 85–242.

District of Columbia Court of Appeals.

Argued Oct. 24, 1989.

Decided Dec. 13, 1989.

Frederic W. Schwartz, Jr., Washington, D.C., for appellant.

Marc R. Wagshal, Chevy Chase, Md., for appellee.

Before BELSON, STEADMAN and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Appellee Sher, an attorney, filed a complaint in intervention seeking payment of a one-third contingent fee under a retainer agreement between himself and appellant Greenberg, whom Sher had agreed to represent in pursuing settlement (and possible litigation) of a negligence claim against the driver of a vehicle which had injured Greenberg in October of 1980. The claim was eventually settled out of court by the driver's insurer, GEICO, for $70,000 in October 1982, several months after Greenberg dismissed Sher as her attorney. Sher's claim for the contingent fee proceeded to trial without jury before Judge Barnes, who entered judgment in favor of Sher for the one-third amount.

On appeal, Greenberg advances four arguments: (1) Sher failed to make out a

*prima facie* case because he did not prove by expert testimony that he was dismissed without cause; (2) the court erroneously excluded expert testimony offered by Greenberg on the issue of discharge for cause; (3) Sher in any event was dismissed for good cause and hence was entitled to no recovery; and (4) Sher had not substantially performed his agreement when fired and hence—assuming his discharge was without cause—still was entitled to recover only in *quantum meruit,* not the contingent fee. We reject each of these contentions and affirm.

## I.

On October 30, 1980, Greenberg was struck by a car while walking her dog on 49th Street in Northwest Washington, D.C. On November 5, 1980, she retained Sher and entered into a written retainer agreement providing that Sher would receive one-third of any recovery. Because Greenberg was experiencing financial difficulties, she advised Sher during their first meeting that she would like to achieve a settlement as quickly as possible.

Sher immediately investigated the accident scene and made initial contact with Donald Martin, GEICO's claims adjuster.[1] There was then a delay in assembling information regarding the amount of Greenberg's damages; the parties dispute who was responsible for this delay. It was not until December of 1981 that Sher sent his first demand letter to GEICO.[2]

Sher filed suit on March 31, 1982. In April he received a settlement offer of $35,000 from Martin, which he rejected after consulting Greenberg.[3] On May 14, 1982, Sher sent another letter to GEICO demanding $100,000 (the policy limit) and explicitly discussing the doctrine of "last clear chance." In early July of 1982, Martin and Sher reached a tentative agreement that a settlement in the range of $70,000 to $75,000 would be appropriate and each expressed confidence that such a settlement would be approved. Greenberg, citing Sher's delay, discharged him on July 19, 1982 and retained attorney Jacob Stein as substitute counsel. In September 1982, three months after Sher's discharge, Stein and GEICO agreed to a $70,000 settlement.[4] Sher then intervened in the proceedings, seeking payment of one-third of the settlement pursuant to the retainer agreement between himself and Greenberg. In rendering judgment for Sher, Judge Barnes concluded that he had substantially performed under the agreement and had been discharged without cause.

## II.

Greenberg first argues that Sher, as intervenor-plaintiff, was required to prove by expert testimony that he was not dismissed for cause in order to make out a *prima facie* case of entitlement to the contingent fee. Appellant cites *O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C.1982), in which this court held that "in a legal malpractice action, the plaintiff must present expert testimony establishing the standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." Without such testimony, a plaintiff cannot make out a *prima facie* case for

---

1. Evidently Greenberg had been walking in the street in the same direction as traffic at the time of the accident, leaving open the defense of contributory negligence. It appears that this caused GEICO, at least initially, to place a low settlement value on the claim. This value later increased after Sher brought up the doctrine of "last clear chance."

2. In the interim, Greenberg had indicated to Sher that a settlement for $120,000 would be like "settling for zero."

3. In May of 1982, Greenberg became concerned that Sher was moving too slowly on her case. She was also confused about whether to accept the $35,000 offer. She consulted another attorney, Clifford Kaslow, for advice. Kaslow told her that in his opinion Sher was doing a proper job. He also expressed his belief that the $35,000 was too low and that there would be other offers.

4. Stein spent a total of four hours on the case which included a two hour initial consultation, one phone call to Mr. Martell, GEICO's attorney, and one deposition notice. The case settled before any depositions were taken.

negligence and a directed verdict will be in order. *Id.* at 342.

■ Sher, however, was not alleging malpractice, but rather that he had fulfilled the terms of the attorney-client agreement. Thus, in making out a *prima facie* case, he was required only to establish the existence of a valid contract and that he had substantially performed the contract. While the assertion that he was fired for good cause was a legitimate defense by Greenberg to his suit for payment of attorney's fees, Sher was not required to negative good cause—by expert testimony or otherwise—in order to make out a *prima facie* case.

### III.

Greenberg's second, and more substantial, contention is that Judge Barnes erroneously excluded expert testimony by Greenberg's proffered witness, attorney Stein, on whether Sher's performance in pursuing settlement and/or recovery fell below the proper standard of care and skill for a personal injury lawyer, and thus on whether Sher was dismissed for good cause. Judge Barnes ruled that, since this was a bench trial, expert testimony on the standard of due care by an attorney was unnecessary in view of her own extensive experience in civil and personal injury litigation.

There is support in *O'Neil v. Bergan,* *supra,* for appellant's argument that expert testimony was appropriate even though this was a bench trial. In that case we noted, in *dictum,* that the rule requiring expert testimony in a legal malpractice action to establish the standard of care and skill "should be applied whether a judge or jury is the trier of fact." 452 A.2d at 342 n. 5. We acknowledged that, even in the jury trial context, there are exceptions to the expert testimony rule when an attorney's lack of care and skill "is so obvious

that the trier of fact can find negligence as a matter of common knowledge," *id.* at 341, but we found the case at bar "too complex for jury analysis without expert help." *Id.* at 342.

■ In the circumstances of this case, however, we conclude that the *dictum* in *O'Neil* is insufficient to demonstrate error in Judge Barnes' exclusion of expert testimony by Stein. First, although the issue of cause for Sher's discharge did, in a broad sense, implicate the standard of due care and skill by an attorney in a personal injury case, that issue was bound up in essentially factual disputes—involving issues of credibility—such as how sensitive Sher had been to Greenberg's stated need for a prompt settlement and how low a figure Greenberg had been willing to settle for. Stein's testimony would have shed no light on these issues. Second, while Judge Barnes purported to rely upon her personal civil experience in assessing whether Sher's performance was reasonable, the fact is that she had before her testimony from multiple experts (though not expressly qualified as such) on the key issue of professional competence on which appellant claims Stein would have testified, *viz.,* how soon Sher should have filed the lawsuit.[5] As appellant concedes, Stein himself, in the course of testifying about his own role in representing Greenberg, expressed his dissatisfaction with the fact that Sher had not filed the lawsuit earlier than he did. Sher, by contrast, testified that in his experience earlier recourse to litigation could have delayed or frustrated the negotiation process, and he was supported in this opinion by attorney Kaslow[6] and claims adjuster Martin from GEICO. The court thus heard testimony from experts in personal injury cases on both sides of the issue of timing, and it would be fanciful to assume that she did not attend to that testimony. *See* R. 59

---

5. In arguing that a new trial is unnecessary and that, instead, this court can direct entry of judgment for Greenberg, appellant asserts that Stein's expert opinion appears on the record and points to transcript pages in which Stein's disapproval of Sher's performance relates entirely to his failure to file suit earlier and thereby begin discovery.

6. Kaslow testified: "If you file a suit promptly, you will get papered. You'll get an answer, you'll get interrogatories, you get depositions. The case won't make the progress that it might otherwise."

("the *record reveals* Mr. Sher's tactics were not out of keeping with general civil practice methods") (emphasis added). Unlike in *O'Neil, supra,* the disputes surrounding the issue of cause for Sher's discharge were not "complex" and, as Judge Barnes indicated, turned on matters such as the "conflicting testimony as to the sequence and substance of negotiations" between Sher and GEICO. Since Stein's testimony as an expert would have been of little utility in resolving these disputes, the trial court did not abuse its discretion in excluding formal expert testimony by Stein.[7]

### IV.

Greenberg takes issue with Judge Barnes' conclusion that she discharged Sher without cause. She contends that in spite of her desperate financial situation, which she communicated to Sher many times, he failed to pursue a settlement aggressively. She points out that it took him until August of 1981 (about 10 months after the accident) to assemble a damages package and that he did not send a demand letter to GEICO until December of that year. Further, it was not until March of 1982, approximately a year and a half after he was retained, that he filed suit. This resulted in GEICO placing the case on a "back burner" and in unnecessary delay in reaching a settlement.

■ In reviewing the decision of the trial court, this court "may not set aside [the] judgment except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C. Code § 17–305(a) (1981); *Kaushiva v. Hutter,* 454 A.2d 1373, 1374–75 (D.C.1983); *Auxier v. Kraisel,* 466 A.2d 416, 418 (D.C. 1983); *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 546–47 (D.C.1981). While the

trial court acknowledged that Sher was somewhat slow in advancing Greenberg's case, there is substantial evidence in the record supporting her conclusion that he performed diligently under all the circumstances. The court credited Sher's testimony that he kept Greenberg informed of the case's progress, had done thorough investigation and photographing of the accident scene and substantial research on theories of liability, and initiated negotiations with GEICO and was pursuing those negotiations with good prospects for a favorable result when he was dismissed. The court rejected Greenberg's testimony—central to her claim of neglect—that she had urged Sher to accept GEICO's initial offer of $35,000, noting that at one point she had told him her case was worth well over $100,000.[8] The court concluded, therefore, that Greenberg's unhappiness with Sher stemmed primarily from her own unrealistic expectation of a prompt *and* sizeable recovery: "financial pressures led her to dissatisfaction with *any* results achieved by Mr. Sher short of immediate and favorable settlement or jury verdict" (emphasis by the court).

In light of these findings, we cannot say that the court's conclusion that Sher was dismissed without cause is unsupported by the evidence or plainly wrong.

### V.

Finally, appellant argues that Sher did not substantially perform under the contingency fee agreement. She argues that for Sher to recover more than in *quantum meruit,* "the actual contingency must have either occurred or be so certain of occurrence that it can be considered to have occurred." This argument is not supported by the law in this jurisdiction. In *In re*

---

7. We note also this court's past expressions of concern about expert testimony by an expert who is also a fact witness in the case. *Bell v. Jones,* 523 A.2d 982, 990 (D.C.1986); *Beach v. United States,* 466 A.2d 862 (D.C.1983). Stein testified about his own actions in Greenberg's behalf, and at the same time was being proffered as an expert on the adequacy of Sher's performance. Since the trial judge did not exclude Stein's testimony on this ground, how-

ever, we do not comment further on the propriety of this scenario.

8. As late as January 1982, Greenberg told Sher in a letter to settle for $140,000 or else "sue for a lot more." This impeached Greenberg's testimony that she told Sher to write to GEICO demanding $100,000, but to accept the original offer of $35,000 if they rejected the demand.

*Waller*, 524 A.2d 748 (D.C.1987), we observed:

> Although courts vary widely on the issue of the compensation due an attorney after discharge without cause, recovery of the full contingency fee is most likely in cases in which the attorney has, before discharge, fully performed, substantially performed, or contributed substantially to the results finally obtained by the client.

*Id.* at 750. In *Waller*, an attorney discipline case, we had no occasion to consider whether "substantial contribution" to the results achieved is sufficient to permit full recovery; nor need we decide that issue now. What is certain is that our decisions have not required proof that the contingency be "certain of occurrence," as appellant maintains. Thus, in *Kaushiva v. Hutter*, *supra*, the attorney (Hutter) had been retained to represent the client at three arbitration hearings. After the last hearing, the arbitrators requested that additional briefs be filed. Hutter was dismissed before these briefs could be prepared, and a short time later the client received a substantial award. We concluded that since Hutter had substantially performed under the contingency fee agreement and was willing to complete his obligation, he was entitled to the full fee even though the outcome of the hearings was unknown when he was discharged. 454 A.2d at 1375. *Cf. Sachs v. Klein*, 154 A.2d 134, 137 (D.C.1959); *Mackie v. Howland*, 3 App. D.C. 461, 480–81 (1894).

In this case, as recited earlier, Judge Barnes found that Sher had thoroughly investigated the accident scene, initiated negotiations with GEICO, conducted research on theories of liability and pursued the negotiations to the point where he and Martin agreed on a recommended settlement in the range of $70,000–$75,000, all before Sher was dismissed. GEICO employees testified, in essence, that although final approval to increase the settlement value to $70,000 came after Sher's dismissal, it was due in large part to their research on the doctrine of last clear chance which he had introduced earlier. The $70,000 settlement was reached only three months after Sher's dismissal and required only four hours of work by Greenberg's new counsel, Stein, half of which was spent in the initial consultation. Stein's entry into the case, as a GEICO official stated, was "good [timing]" because GEICO "had just put the price on it." There was, in sum, substantial evidence in the record supporting the trial court's conclusion that Sher had substantially performed.

## VI.

The judgment of the trial court is, accordingly,

*Affirmed.*