**In re John A. WALLER, Respondent.**

**No. 90–15.**

District of Columbia Court of Appeals.

Submitted March 13, 1990.
Decided April 25, 1990.

Before SCHWELB and FARRELL, Associate Judges, and KERN, Senior Judge.

PER CURIAM:

In this disciplinary proceeding, the Board on Professional Responsibility found that respondent had engaged in misrepresentation in violation of DR 1–102(A)(4) when, in response to a show cause order issued by the Superior Court, he falsely—and with intent to deceive—told the court that he had previously lied to a court-appointed mediator about his representation of a third-party (a surgeon) and about his reason for that lie. We adopt the Findings of Fact, Conclusions, and Proposed Discipline of the Board on Professional Responsibility. Its well-reasoned report is reproduced herewith.

Accordingly, it is hereby ordered that respondent, John A. Waller, be suspended

---

1. The third member of the Hearing Committee was Hamilton P. Fox, Esq., who was appointed to this Board during the pendency of this case. Mr. Fox did not participate either in the Hearing Committee's or the Board's deliberations.

2. DR 1–102(A)(4) states that a lawyer shall not:

from the practice of law in the District of Columbia for a period of sixty days, effective thirty days from the date of this order.

*So ordered.*

BOARD ON PROFESSIONAL RESPONSIBILITY DISTRICT OF COLUMBIA COURT OF APPEALS

Bar Docket No. 159–88
IN THE MATTER OF JOHN A. WALLER, ESQUIRE

REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

After a hearing, two members [1] of Hearing Committee No. 10 found that Respondent, John A. Waller, Esq., had engaged in misrepresentation in violation of DR 1–102(A)(4).[2] One of these members recommended public censure as the appropriate sanction; the other recommended that Respondent be suspended for thirty days and be required to prove fitness before readmission.

Neither Bar Counsel nor Respondent filed exceptions. Nevertheless, the Board has reviewed this matter and has reached a result different from that recommended by the Hearing Committee. Specifically, although the Board agrees that misrepresentation has been proven on this record, the violation we find is a different one from that found by the Hearing Committee. Based on the violation we find, the Board recommends the sanction of a 60–day suspension.

FINDINGS OF FACT

The pertinent facts in this matter, which are not in dispute, are as follows:

1. Respondent has been registered as an attorney with the District of Columbia Bar since 1971. [B.Ex. "A"].[3]

---

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

3. References to Bar Counsel's Exhibits are "B.Ex. ___"; Transcript references are "Tr. ___."

2. Sometime prior to October, 1987 Respondent was hired by Yolanda Thorpe to handle a claim for damages arising from a medical bone implant procedure that failed. On October 16, 1987, Respondent filed a "Complaint for Breach of Warranty and Negligence" on behalf of Ms. Thorpe. [B.Ex. 4].

3. The suit joined the hospital where the implant had been done, as well as the tissue bank that supplied the bone tissue. The surgeon who did the implant was not named a defendant.

4. On March 29, 1988, before discovery began, the Trial Judge, Henry Greene, ordered the parties to attend a mediation session with Joel Finkelstein, a lawyer in private practice who would serve as mediator. [B.Ex. 1(b)].

5. During the mediation session, it occurred to the mediator that "[t]here was a glaring vacuum in the pleading [i.e., complaint] in that the surgeon was not named as a defendant." [Tr. 26]. At that time, Respondent told the mediator that he "was the surgeon's attorney." [Tr. 26, 28]. The mediator then told Respondent that, in the mediator's opinion, Respondent "had a conflict of interest in this case in that he represented the surgeon who could and probably should have been a named defendant because it was a meritorious malpractice claim." [Tr. 27]. When Respondent disagreed with the mediator's assessment, the mediator told Respondent to bring the matter to Judge Greene's attention. [Tr. 27–28].

6. Thereafter, the mediator tried several times to reach Respondent by telephone to find out whether he had, in fact, alerted the Court to the possible conflict situation. The mediator never got through to Respondent. [Tr. 30].

7. Receiving no response from Mr. Waller, the mediator then contacted Judge Greene on his own. [Tr. 30]. Judge Greene suggested that the mediator again attempt to reach Respondent in order to have Respondent himself contact the Court.

This was attempted, again without success. [Tr. 30–31].

8. Still concerned, the mediator contacted Judge Greene once more and, for the first time, told him about the possible conflict of interest. The mediator felt he could do so despite the non-disclosure provision of the mediation order [4] because "it was a matter that had nothing to do with the negotiations between the parties but might affect the administration of justice in the Superior Court ..." [Tr. 31–32]. Judge Greene agreed and, on April 1, 1988, he issued an order requiring Respondent to show cause why his continued representation of Ms. Thorpe did not constitute a violation of the conflict prohibitions of DR 5–105(B)(2). [B.Ex. 1(c)].

9. In response to the Show Cause Order, Respondent filed a document with the Court stating that, notwithstanding what he had said to the mediator, Respondent was *not* Dr. Jackson's attorney at the time of the mediation. Respondent admitted that he had told the mediator the opposite, but he explained that he had done so only to test whether remarks made during the mediation process would be held in confidence. [B.Ex. 1(d)]. Based on this disclosure, Judge Greene, on April 18, 1988, reported the matter to the Office of Bar Counsel, stating:

> Based on the information that has come to my attention in this case, it would appear that Mr. Waller either has violated Disciplinary Rule 5–105(B), which precludes a lawyer from multiple representation where the representation of one client is likely to be adversely affected by his representation of another client, or Disciplinary Rule 1–102(A)(4), which prohibits a lawyer from engaging in conduct involving "dishonesty, fraud, deceit or misrepresentation." Consequently, I bring this matter to your attention for whatever action you deem appropriate. [B.Ex. 1].

---

**4.** The order requiring mediation stated:
ORDERED that no statements of any party or counsel shall be disclosed to the court or admissible as evidence for any purpose at the trial of this case ... [B.Ex. 1(b)].

10. The matter was docketed by Bar Counsel, and Respondent was asked to respond to Judge Greene's statement. On May 20, 1988, Respondent submitted a letter asserting an entirely new explanation by [*sic*] his actions. Respondent now asserted that he had *not* intentionally tried to mislead the mediator in order to test confidentiality; instead, he now said that when he had told the mediator that he represented Dr. Jackson, it had merely been a "slip of the tongue." As Respondent put it:

> What really happened is that I said I represented Dr. Jackson but I really meant that I didn't represent Dr. Jackson. Dr. Jackson wasn't a party so I didn't think it was important. [B.Ex. 2].

11. Respondent's letter of May 20, 1988 [B.Ex. 2] went on to justify the non-joinder of the surgeon in the case in the following terms:

> The suit was only to compel discovery so we could determine who was at fault. Dr. Jackson fully cooperated so there was no need to bring him in at this time. [B.Ex. 2].

Although he did not testify under oath, Respondent repeated this explanation at the hearing, stating that "Dr. Jackson gave complete discovery in this case as to everything, he talked to me, he told me his position but the other people would not." [Tr. 9].

12. Although Respondent had, in fact, interviewed the surgeon about Ms. Thorpe's case, this interview had not occurred until December, 1987, which was *after* he had filed the suit. [B.Ex. 3]. Therefore information furnished by the surgeon could *not* have been the justification for Respondent's failure to join him as a defendant.

13. On May 23, 1988, Respondent formally withdrew as Ms. Thorpe's counsel. [B.Ex. 3]. She retained new counsel, who filed an amended complaint joining the surgeon as a defendant. The new pleading alleged that Ms. Thorpe's injuries had been caused by the surgeon's negligence in failing properly to prepare the bone tissue for implantation. [B.Ex. 7.]

14. Shortly after he withdrew from representation of Ms. Thorpe, Respondent contacted Ms. Thorpe and tried to persuade her not to press claims against Dr. Jackson. He apparently told her that he didn't think Dr. Jackson had any liability and should not be included in the case. [Tr. 58–60].

15. Respondent knew Dr. Jackson and had, in fact, represented the surgeon on legal matters prior to his retention in Ms. Thorpe's case. [B.Ex. 3]. The Board finds that Respondent had a relationship with Dr. Jackson that impaired the independent professional judgment he should have exercised on behalf of Ms. Thorpe.

## CONCLUSIONS

(a) Respondent's March, 1988 Statement to the Mediator was not a Misrepresentation.

The Hearing Committee concluded that Respondent had engaged in a misrepresentation that violated the Disciplinary Rules when he told the mediator, in March, 1988, that he was the surgeon's attorney. We believe that, in reaching this conclusion, the Hearing Committee applied the wrong legal standard. They apparently considered any false statement to be a misrepresentation, whether or not the statement was inaccurate in a *material* respect.

On this record, even if Respondent's description of his relationship with Dr. Jackson was not precisely accurate, it was not materially false. The evidence here makes it clear that Respondent was essentially telling the truth when he suggested that he had a relationship with Dr. Jackson that influenced his activities on behalf of Ms. Thorpe. For one thing, that the utterance was a substantial admission against interest is a good indication that it was a true statement. Moreover, there appears to be no justification on this record for Respondent's failure to join Dr. Jackson as a defendant other than Respondent's relationship with the surgeon. If Respondent overstated the nature of the relationship by describing himself as the physician's current lawyer, this was probably unintentional and immaterial.

Even if the statement as to Respondent's being the surgeon's lawyer had been materially false, there is no evidence on this record that the statement was accompanied by *scienter* or that it was made with intent to deceive. Although Respondent later said that he had made the statement in order to mislead the mediator—as a test of the confidentiality of the mediation process—Respondent later withdrew this explanation. [*See* Finding 10 above]. In any event, whether or not Respondent intended to deceive, the only person injured by the utterance was Respondent himself, and this further militates against a finding of violative misrepresentation.

We have pondered why Respondent took the unusual step of admitting to the mediator that the surgeon was his client. Perhaps he failed to realize that, by admitting the relationship with Dr. Jackson, he was effectively conceding a conflict of interest. Perhaps he believed, erroneously, that the mediator would not disclose such a startling revelation. For whatever reason, we feel that Respondent did lapse into candor in making the March, 1988 admission. In the Board's view, it would be truly ironic if, on the facts of this case, Respondent were disciplined for the one statement as to his relationship with the surgeon that came closest to the truth.

We note that one of the two deciding Hearing Committee members also had substantial doubt whether Respondent's statement to the mediator was really untrue. It will be recalled that one member recommended that Respondent be required to show fitness for readmission to practice after a suspension because this member felt that Respondent had improperly acted "out of concern for the doctor" and "showed flagrant conflict of interest. . . ." *See* Separate Opinion of Member Brent, p. 2. This conclusion as to a conflict of interest could not have been reached unless the member believed that Respondent did, in fact, have a relationship with the doctor that influenced his actions on behalf of Ms. Thorpe. If he had such a relationship, Respondent's statement to the mediator was effectively true, as the Board now finds.

Accordingly, we conclude that Respondent's statement of March 28, 1988, was not a misrepresentation in violation of DR 1–102(A)(4).

### (b) The Statement of April 12, 1988 was a Violative Misrepresentation.

Although Respondent's March 28, 1988 statement was not a misrepresentation violative of DR 1–102(A)(4), Respondent's statement made in the document that he filed with the Court on April 12, 1988 (which were also charged as a violation by Bar Counsel) was materially false, and made with intent to deceive. We refer, of course, to Respondent's statement in response to Judge Greene's Show Cause Order that he had lied about being the surgeon's attorney simply to test the confidentiality of the mediation process.

Respondent himself admitted that this April 12 statement was not true in his May 20, 1988 response to Bar Counsel's inquiry in this case [B.Ex. 2]. In that document, Respondent explained:

> I express[ed] myself incorrectly when I said I intentionally misled the mediator. (I was so excited that I had proof that there was a leak in contradiction to the Judge Order.)

Respondent tried to justify his April 12 statement as a "slip of the tongue" brought on by "excitement." However, it seems clear that Respondent fabricated this explanation when he became aware that his candid remarks as to his relationship with the surgeon had been reported to the Court, thereby putting him in the position where he had effectively conceded a conflict of interest.

Despite Respondent's urging, it is hard to excuse Respondent's false statement about his "test" as an excited utterance because it was, in fact, a written statement filed with the Court in response to a Show Cause Order. In that type of situation, attorneys can reasonably be expected to be careful.

We conclude, therefore, that Respondent's April 12, 1988 filing with the Court

contained a misrepreséntation that violated DR 1–102(A)(4).

## PROPOSED DISCIPLINE

Because we have found a violation of the Disciplinary Rules, it becomes necessary for us to recommend appropriate discipline. In imposing sanctions, the Court in prior cases has looked to the well-settled factors that we now discuss in turn:

### (a) Prior Discipline

Respondent has a record of prior discipline. In 1987, Respondent was suspended from the practice of law for 30 days for violation of DR 2–110(B)(4) (failing to withdraw from employment after being discharged); DR 2–106(A) (charging a clearly excessive fee); and DR 9–103(B)(4) (failing to deliver client papers). *In re Waller,* 524 A.2d 748 (D.C.1987). In 1981, Respondent received an informal admonition for neglect (DR 6–101(A)(3)), and for conduct prejudicial to the administration of justice (DR 1–102(A)(5)). Although neither of these prior disciplinary cases involved the precise type of violation involved in the present matter, an unfortunate pattern does emerge. Respondent appears highly insensitive to the requirements of the Disciplinary Code.

### (b) Seriousness of the Conduct

We have found that Respondent has made a knowingly false statement with intent to mislead in a court filing. The seriousness of such misconduct cannot be open to serious questions. As the Court said in *In re Hutchinson,* 534 A.2d 919, 924 (D.C. 1987), citing *In re Reback,* 513 A.2d 226, 231 (D.C.1986) (*en banc*), "Lawyers have a greater duty than ordinary citizens to be scrupulously honest at all times, for honesty is basic to the practice of law."

### (c) Prejudice to the Client

It cannot be said with certainty that Respondent's misrepresentation—in and of itself—caused prejudice to his client. We think, however, that the misrepresentation was part and parcel of an overall pattern of conduct by Respondent that did, in fact, cause prejudice. We refer to the fact that Respondent ultimately had to withdraw, thereby causing his client to change attorneys during the pendency of her case. We also refer to the fact that the surgeon was not sued until Respondent had been replaced as counsel. Not only was the prosecution of the client's claim delayed, but the Court's time was also wasted.

### (d) Violation of Other Code Provisions

As discussed above, it seems clear that Respondent's decision not to join the surgeon in Ms. Thorpe's suit was motivated by factors unrelated to the merit or lack of merit of the claim against that party. The Disciplinary Rules require that a lawyer "shall decline proffered employment if the exercise of his independent professional judgment on behalf of a client, will be, or is likely to be, adversely affected by the acceptance of the proffered employment, or if it would likely involve him in representing differing interests...." DR 5–105(A). The Disciplinary Rules also prohibit a lawyer from accepting employment "if the exercise of his professional judgment on behalf of his client will be, or reasonably may be, affected by his own financial, business, property, or personal interests." DR 5–101(A). Although Bar Counsel did not charge conflict of interest as a violation in this case, we believe that Respondent did not exhibit undivided loyalty to Ms. Thorpe, and we take this into account in recommending the stringent sanction of suspension. Indeed, one of the Hearing Committee members would have required a showing of fitness for reinstatement for this reason—a recommendation we do not follow. We also feel that Respondent's actions probably would also constitute a violation of DR 1–102(A)(5) (conduct prejudicial to the administration of justice), if that too had been charged by Bar Counsel.

### (e) Conduct Involving Dishonesty and/or Misrepresentation

This case involves at least one serious misrepresentation—the violation we have found.

(f) *Respondent's Acknowledgment of Wrongful Conduct*

At the close of Bar Counsel's case, Respondent chose not to testify or put on any case. The transcript contains the following exchanges:

MR. WALLER: I have no testimony to make because I think [the mediator] basically told the facts of what happened and I answered in my answers so everything is in the record how I felt and my intent and my objection, so I would just like this tribunal to look at all of the records and what I wrote and the reason why is because I'm too emotional about this. I think I have been misused and abused by the system and so I would just like everything that's written to be considered and so forth.

THE CHAIR: I would recommend that you present testimony, Mr. Waller, because what has been submitted in my opinion has conflicting evidence in the record that you have submitted and I am going to recommend to you that I place you under oath and that the Committee direct questions to you, solicit testimony regarding evidence that's in the record and allow Bar Counsel to cross examine you under oath regarding evidence and your statements that you have heard here today, but of course, it's your option to decide whether you want to present testimony or not and the Committee is quite capable of going forward based on the submissions.

MR. WALLER: I don't want to go forward. I'm too emotional. I feel like I've been taken advantage of, and it would be submitted also about that....
[Tr. 54–55].

It can be seen that Respondent showed little awareness of the impropriety of his actions. At the hearing, Respondent continued to focus on his "abuse" at the hands of the mediator, who had disclosed to the Court what Respondent had told him.[5]

There was also evidence of a further aggravating factor contained in this record. It was revealed in a proceeding before Judge Greene in Ms. Thorpe's case that, sometime between May 23, 1988 (when Respondent withdrew as Ms. Thorpe's counsel) and August 10, 1988, Respondent called Ms. Thorpe and attempted to get her not to include Dr. Jackson as a defendant in the case because "he didn't think Dr. Jackson had any liability and should not be included in the case." Tr. 58. This conversation took place before Ms. Thorpe's new counsel filed the Amended Complaint that joined the surgeon. *See* B.Ex. 7, dated September 6, 1988. Although Respondent's efforts to shield the surgeon were thus not successful, that Respondent would even try such a tactic after being forced out of this case is a further manifestation of a most careless ethical attitude.

Based on all of these factors, we believe that a 60–day suspension would be the appropriate sanction here. In so recommending, we rely on such precedents as *In re Reback*, 513 A.2d 226 (D.C.1986) (*en banc*), which involved a six-month suspension for presentation of false facts to the Court and other violations; *In re Sandground*, 542 A.2d 1242 (D.C.1988), which upheld a 90–day suspension for an intentional failure to disclose material information in discovery; and *In re Garner*, Bar Docket No. 297–88 (B.P.R. 6/23/89), pending D.C.C.A., where we recommended a six-month suspension for filing falsely notarized documents.

While those cases involved more egregious conduct than we have found here, the Court there imposed longer suspensions than we recommend here. Evaluating all the factors in this case in light of these precedents, we feel that a 60–day suspension is appropriate.

Dated this 15th day of December, 1989.

---

5. Respondent moved below to dismiss the charges based on the alleged violation of the non-disclosure requirement of the mediation order. We would agree with the Committee's recommended ruling (Tr. 19) that the motion be denied. We do not feel that the confidentiality requirement was intended to preclude disclosures such as that made by the mediator to the Judge in this case. In any event, the violation we have found is not based on a statement made during mediation, but one made in a document filed in open court records.

BOARD ON PROFESSIONAL
RESPONSIBILITY
By: /s/ CHARLES R. DONNENFELD
CHARLES R. DONNENFELD,
Vice Chairman

All Board Members participated in this decision, with the exception of Member Fox.