**In re Tony O. SHAW, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 00–BG–837.**

District of Columbia Court of Appeals.

Argued April 12, 2001.
Decided July 12, 2001.

John O. Iweanoge, Washington, DC, for respondent.

Ross T. Dicker, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before STEADMAN, SCHWELB and REID, Associate Judges.

PER CURIAM:

Before us is a unanimous recommendation by the Board on Professional Responsibility that respondent be publicly censured for violation of two rules of professional conduct: Rule 1.5(a) (charging an unreasonable fee), and Rule 1.15(b) (failure to notify interested party of receipt of funds). Respondent has filed exceptions, asserting that the finding that he violated Rule 1.15(b) lacks support and that a public censure is inconsistent with the sanction imposed in similar cases.

## 1. *Rules Violations*

Briefly put,[1] the record supports the following facts. Respondent was retained to represent a client who was injured in a Maryland motor vehicle accident. The retainer agreement provided for a one-third contingency fee. The other motorist was insured by Travelers Indemnity Co. Travelers informed respondent that it was transmitting to him $2,500 in personal injury protection (PIP) benefits under Maryland law. Of that sum, $800 was retained as attorneys' fees[2] and the bulk of the balance paid over to the client.

The client carried a health insurance policy with Kaiser Permanente, which covered her medical expenses arising out of the accident. The client signed Kaiser's

---

1. The facts are markedly condensed from the extensive findings of the Board but will suffice for present purposes.

2. The fee was split between respondent and a Maryland law firm, which actually handled the escrow and disbursement of the funds.

"Acknowledgment of Lien and Assignment of Proceeds" form (A & A), in which she acknowledged that "pursuant to the contract governing enrollment in Kaiser Permanente," it had a lien "against any and all sums recovered from any third party source, whatsoever, without set off, limitation or reduction," and directed her attorney "to disburse to Kaiser Permanente said sums upon receipt thereof." Respondent in an "Acknowledgment of Attorney" section also signed the form, whereby he acknowledged that he had read and agreed "to be bound by the terms of the Acknowledgment of Lien and Assignment of Proceeds set forth above." Nonetheless, Kaiser was never timely notified of the PIP payment to respondent by Travelers nor of its disbursement.

■ We "accept the Board's findings as long as they are supported by substantial evidence in the record." *In re Boykins*, 748 A.2d 413, 414 (D.C.2000); D.C. Bar R. XI, § 9(g)(1). Respondent does not here dispute that he took an unreasonable fee when he charged $800 in an uncontested $2,500 PIP claim. *See Attorney Grievance Comm'n v. Kemp*, 303 Md. 664, 496 A.2d 672, 677–79 (1985) (attorney may not charge more than a minimal fee for processing an uncontested PIP claim).[3] However, respondent does claim that he was not in violation of Rule 1.15(b). He argues that under Maryland law Kaiser in fact had no valid claim to the settlement funds, citing *Riemer v. Columbia Med.*, 358 Md. 222, 747 A.2d 677 (2000). However that holding might apply to a situation like that of the client here, the fact is that at the time three years previously when

respondent received the check from Travelers (February 19, 1997), Maryland law was unsettled on the issue.[4] Indeed, as already indicated, in signing the "A & A" form on February 7, 1997, respondent specifically recognized and acknowledged Kaiser's rights in the monies paid by Travelers. It was not for respondent three weeks later to unilaterally ignore Kaiser's possible claim in the funds and belatedly attempt to justify it by long-after-the-fact legal developments. In these circumstances, the Board permissibly concluded that respondent's failure to notify Kaiser of the receipt of funds constituted a violation of Rule 1.15(b).

## 2. Sanction

■ The Board noted that sanctions ranging from informal admonition to suspension have been imposed in cases with an excessive or unreasonable fee violation.[5] *See, e.g., In re Roxborough*, 675 A.2d 950, 952 (D.C.1996) (per curiam) (noting prior informal admonition for excessive fee); *In re Waller*, 524 A.2d 748, 749 (D.C.1987) (thirty-day suspension for clearly excessive fee and two other violations); *In re Landesberg*, 518 A.2d 96, 97 (D.C.1986) (per curiam) (sixty-day suspension for failure to return unearned fee and three other violations). The Board also observed that in a reciprocal case involving only an excessive fee, we had stated that "a public censure is within the range of sanctions that would be imposed in this jurisdiction for respondent's misconduct." *In re Oak*, 724 A.2d 1205, 1206 (D.C.1999) (per curiam) (citation omitted).[6] The Board further noted that sanctions have been likewise imposed in cases with a violation of

---

3. Respondent, who was newly admitted to the bar, asserts simply that he was unaware that the fee was excessive in the circumstances.

4. Respondent himself paid $1500 to Kaiser after Bar Counsel's investigation began.

5. As indicated, such cases typically involve one or more violations in addition to the excessive fee charge, just as in the case before us here.

6. It was proper for the Board to at least take note of the sanctions in reciprocal discipline

Rule 1.15(b) or its predecessor [7] ranging from informal admonition to suspension. *See, e.g., In re Ross*, 658 A.2d 209 (D.C. 1995) (thirty-day suspension for failure to notify and pay over funds to third party and another violation,); *Matter of Goldstein*, 471 A.2d 267 (D.C.1984) (public censure for failure to deliver funds to client, and one other violation).[8]

 The Board here carefully considered the relevant factors in determining censure to be an appropriate sanction in this dual violation case. *See In re Waller*, 573 A.2d 780, 784–85 (D.C.1990). We "impose the sanction recommended by the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be

unwarranted." *In re Boykins*, 748 A.2d 413, 414 (D.C.2000) (citing D.C. Bar R. XI, § 9(g)(1)). "The Board's recommended discipline comes to the court with a strong presumption in favor of its imposition. Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re Lopes*, 770 A.2d 561, 567 (D.C.2001) (citations omitted). Such is the case here.

It is therefore ORDERED that respondent be, and he hereby is, publicly censured.

---

cases since in such cases, reciprocal discipline is not imposed where "the misconduct established warrants substantially different discipline in the District of Columbia." D.C. Bar R. XI § 11(c)(4).

7. Prior to our adoption of the current Rules of Professional Conduct, our DR 9–103(a) and (b) did not require prompt notice and delivery of funds and property to third parties, only to clients. Rule 1.15(b), adopted on January 1,

1991, covers notice to third parties as well as clients.

8. The Board also cited two unpublished informal admonitions by the Board: *In re Eaton*, Bar Docket No. 310–95 (1997) (attorney failed to supervise junior attorney in promptly paying out settlement funds); *In re Harvey*, Bar Docket No. 214–95 (1997) (attorney disbursed funds to client rather than medical provider).