**In re Donald A. CLOWER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 01–BG–1453.**

District of Columbia Court of Appeals.

Argued Oct. 15, 2002.
Decided Sept. 18, 2003.

---

Donald A. Clower, pro se.

Ross T. Dicker, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before STEADMAN, SCHWELB and GLICKMAN, Associate Judges.

PER CURIAM:

The Board on Professional Responsibility recommends that respondent Donald A. Clower be publicly censured for not fulfilling his fiduciary and record-keeping obligations with respect to a client's settlement proceeds. The Board concluded that respondent violated Rule of Professional Conduct 1.15(b) by failing to furnish prompt notice of the settlement and make prompt payment to a third party who had an interest in the funds. The Board further concluded that respondent violated Rule 1.15(a) and D.C. Bar R. XI, § 19(f), by failing to maintain complete records regarding the disbursements that respon-

dent made from the settlement proceeds. Respondent takes partial exception to the Board's report. Respondent acknowledges that he violated the notice and payment requirements of Rule 1.15(b) but disputes that he violated the "complete records" requirements of the other rules. In addition, respondent argues that the recommended sanction is too harsh. We disagree with respondent on both counts and adopt the disposition that the Board proposes.

## I.

Respondent represented Claudia Bradford in a personal injury action against the District of Columbia. In connection with that action, respondent and Ms. Bradford executed an "authorization and assignment" agreement with Nathaniel Randolph, who was Ms. Bradford's physical therapist. The agreement obligated respondent to pay Mr. Randolph's fees from the proceeds of any recovery in the personal injury action. Mr. Randolph thereafter continued to provide therapy to Ms. Bradford and testified on her behalf at trial. The jury returned a verdict in Ms. Bradford's favor for $192,000, and the District of Columbia noted an appeal.

Two years later, while the appeal was pending, the District of Columbia and Ms. Bradford agreed to settle. On May 7, 1996, the District forwarded to respondent a $100,000 settlement draft payable to Ms. Bradford and respondent. Respondent deposited the draft into his escrow account and prepared a settlement and disbursement statement for his client's approval. The statement allocated $5,499 of the settlement to Mr. Randolph.[1] The statement further provided that respondent would receive $35,496.10 ($33,000 in attorney's fees and $2,496.10 for costs that respondent had advanced). Except for a few hundred dollars payable to Suburban Credit, Ms. Bradford was allocated the balance of the settlement, $58,565.64.

Ms. Bradford approved the proposed distributions and, for personal reasons, requested that respondent defer distributing her share of the settlement proceeds to her. As an accommodation to his client, who was disabled, respondent agreed to continue to hold Ms. Bradford's portion of the settlement funds in his escrow account. In accordance with the settlement and disbursement statement, respondent paid himself and Suburban Credit. He did not, however, pay Mr. Randolph.

On May 9, 1996, respondent prepared a letter to Mr. Randolph advising him that the lawsuit had been settled and asking him to accept a fifty percent reduction in his fee. The letter stated that the full $5,499 due Mr. Randolph would be held in escrow for him. For unknown reasons, this letter was never sent. Mr. Randolph did not learn of the settlement until he made inquiry of respondent over two years later, in September 1998. Meanwhile, between July 1996 and September 1998, respondent issued a series of checks distributing the remaining settlement funds to Ms. Bradford herself and to three payees who were not listed on the settlement and disbursement statement. Until August 1998, respondent still held sufficient funds in his escrow account to pay Mr. Randolph the $5,499 that the statement showed he was entitled to receive. By then, however, respondent had forgotten about his obligation to pay Mr. Randolph. In August and September 1998, respondent distribut-

---

1. There is an unresolved factual dispute about how much Mr. Randolph was actually owed—he testified that his bills totaled $15,560, and respondent's records did not support the low-er figure that respondent used in the settlement and disbursement statement—but the dispute is not material to the issues before us in this appeal.

ed the last of the settlement funds in his possession. Respondent never checked his records before making these distributions to ensure that he had made all the payments called for on the settlement and disbursement statement.

When Mr. Randolph finally contacted respondent in September 1998, respondent informed him that Ms. Bradford's case had been settled and that all of the settlement funds had been distributed. Mr. Randolph complained to Bar Counsel that respondent had failed to pay his bill as required by the authorization and assignment agreement that respondent and Ms. Bradford had signed. Bar Counsel opened an investigation.

In the course of the investigation, Bar Counsel requested records demonstrating that Ms. Bradford had authorized the payments from her settlement funds to the several persons who were not listed on the settlement sheet. In response to that request, Ms. Bradford provided a letter confirming that respondent had made those payments with her knowledge and consent. However, respondent had no contemporaneous written records evidencing his client's authorization or explaining why he made the disbursements from her funds in his escrow account.

## II.

■ By virtue of the authorization and assignment agreement, Mr. Randolph had an interest in the settlement proceeds. Rule 1.15(b) therefore required respondent to "promptly notify" Mr. Randolph upon his receipt of those proceeds and to "promptly deliver" to Mr. Randolph the funds he was entitled to receive.[2] The Board on Professional Responsibility found, and respondent does not dispute, that respondent violated these requirements. *See In re Shaw*, 775 A.2d 1123, 1125 (D.C.2001); *In re Ross*, 658 A.2d 209, 211 (D.C.1995). We agree. We also note that while respondent's failure to notify and pay Mr. Randolph was, in the Board's words, "a negligent oversight," respondent prolonged his failure to pay even after Mr. Randolph brought the oversight to respondent's attention. Mr. Randolph still had not been paid by January of 2000, when he appeared before the Hearing Committee in this matter.

■ The Board concluded that respondent also violated Rule 1.15(a) and D.C. Bar R. XI, § 19(f), by failing to keep "complete records" of the settlement funds he held for Ms. Bradford between May 1996 and September 1998.[3] The Board

2. Rule 1.15(b) provides in pertinent part as follows:

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall *promptly notify the* client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive. . . .

3. Rule 1.15(a) provides in pertinent part as follows:

(a) A lawyer shall hold property of clients or third persons that is in the law-

yer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account . . . . Complete records of such account funds . . . shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

Section 19 (f) of D.C.App. Rule XI similarly provides in pertinent part as follows:

(f) Required records. Every attorney subject to the disciplinary jurisdiction of this Court shall maintain complete records of the handling, maintenance, and disposition of all funds . . . belonging to another person . . . at any time in the attorney's possession, from the time of receipt to the

found that respondent's records were incomplete because they were "devoid of any written explanation as to why he was distributing his client's funds to various third parties" whose names were not shown on the settlement and disbursement statement his client had approved.[4] The Board explained its interpretation of the "complete records" requirement as follows:

> The Rules of Professional Conduct should be interpreted with reference to their purposes. The purpose of maintaining "complete records" is so that the documentary record itself tells the full story of how the attorney handled client or third-party funds and whether the attorney complied with his fiduciary obligation that client or third-party funds not be misappropriated or commingled. Financial records are complete only when documents sufficient to demonstrate an attorney's compliance with his ethical duties are maintained. The reason for requiring complete records is so that any audit of the attorney's handling of client funds by Bar Counsel can be completed even if the attorney or the client, or both, are not available.

> In this matter, had Respondent or Ms. Bradford not been available to testify that Respondent's checks disbursing her settlement funds to unknown parties were properly issued, the documents maintained by Respondent would not have been sufficient to establish that

Respondent was in compliance with his fiduciary duties. Absent proof that the checks issued to Ms. Bradford's acquaintances were properly issued, the Clients' Security Trust Fund might have been required to compensate Ms. Bradford's heirs. *See* D.C. Bar R. XII, § 3, "Purpose of Trust Fund."

We agree fully with the Board's reasoning and its conclusion that respondent violated his duty to maintain "complete records" of the account in which he held his client's settlement proceeds. Respondent argues that the Board adopted a novel interpretation of a vague requirement— the Rules do not define the term "complete records"—and that it is unfair to hold him accountable under a more rigorous record keeping standard than was in place at the time he disbursed Ms. Bradford's funds.[5] Respondent emphasizes that he did maintain records that showed each disbursement he made and that identified each payee. *Cf. In re Choroszej*, 624 A.2d 434, 436 (D.C.1992) (holding that attorney failed to maintain complete records in violation of Disciplinary Rule [DR] 9–103(B)(3), the predecessor to Rule 1.15(a), where he could not produce a ledger of the checks he had written on a client trust account or bank statements and accounting records showing what was paid to or received from his clients).

---

time of final distribution, and shall preserve such records for a period of five years after final distribution of such funds ....

**4.** Bar Counsel contended that the "complete records" requirement imposed a duty on respondent to maintain contemporaneous written authorizations from his client for each disbursement from the settlement proceeds. The Board was "not convinced that a contemporary written authorization by the client is the only method for making 'complete records.'"

**5.** In its report the Board states that "it is only fair to admit" that Rule 1.15(a) and D.C. Bar R. XI, § 19(f) do not "provide lawyers with much practical guidance as to when records are 'complete' or what it takes to comply with this important fiduciary requirement." The Board also recognized that respondent did keep partial records and that he was trying to accommodate his client's wishes. Ultimately, the Board concluded that "[i]n light of the novelty of the issue, we see this record keeping violation as less serious than the failure to promptly deliver funds to Mr. Randolph."

We reject respondent's argument. The Board's interpretation of the "complete records" requirement strikes us as only common sense, and it is not novel. *See In re Jones*, 521 A.2d 1119, 1121 (D.C.1986) (adopting Board report finding a violation of DR 9–103(B)(3) where attorney could not furnish documentary justification for disputed disbursements); *see also* the Model Rule on Financial Recordkeeping adopted by the American Bar Association in 1993, which lists in detail the records a lawyer should keep. Moreover, the gaps in respondent's records were blatant: his settlement and disbursement statement purported to list the persons entitled to shares of the settlement proceeds, but he made payments to persons who were not listed and failed to pay one person who was listed. Nothing in respondent's records explained these obvious discrepancies.

The Board recommends a public censure as the appropriate sanction for respondent's failures to notify and pay Mr. Randolph promptly and to maintain complete records of client funds.[6] Respondent argues that a public censure is too harsh and is inconsistent with sanctions imposed in similar cases; he asks us to consider an informal admonition instead. Our Rules provide that we "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g)(1). "Although the ultimate choice of a sanction rests with this court, we are obliged to respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable." *In re Ross*, 658 A.2d 209, 210 (D.C.1995) (internal quotation marks and citations omitted). Based on the gravity of respondent's prolonged failure to notify or pay Mr. Randolph (which was exacerbated by respondent's failure to pay even after the omission was brought to respondent's attention), respondent's disbursement to others of the funds in which Mr. Randolph had an interest, the sizable amount at stake, and the absence of mitigating factors, we cannot disagree with the Board that a public censure is appropriate and consistent with the sanctions imposed in similar cases. *See, e.g., In re Shaw*, 775 A.2d at 1125–26 (imposing public censure on attorney who failed to pay a third-party medical provider and charged an excessive legal fee); *In re Mitchell*, 727 A.2d 308, 315 (D.C.1999) (public censure for failure to deliver client funds to client in conjunction with other ethical violations); *In re Goldstein*, 471 A.2d 267, 268 (D.C.1984) (public censure for failure to deliver funds to client and neglect of a legal matter entrusted to the attorney).

For the foregoing reasons, we adopt the recommendation of the Board that respondent Donald A. Clower be publicly censured for violating Rules 1.15(a) and 1.15(b) of the District of Columbia Rules of Professional Conduct and D.C. Bar R. XI, § 19(f).

*So ordered.*

---

6. The Board offers this recommendation with a caveat that "a public censure should not necessarily be viewed as a benchmark for future matters" involving failures to pay third parties in violation of Rule 1.15(b). For example, the Board states, "[w]here attorneys deliberately underpay amounts due to third parties in order to recover larger legal fees, a sanction more severe than a public censure may be appropriate."