*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 14-BG-1468

IN RE TIMOTHY D. NAEGELE, RESPONDENT,

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 161448)

On Report and Recommendation of the
Board on Professional Responsibility

(BDN-271-14)

(Submitted May 22, 2018                                Decided February 27, 2020)

Before BECKWITH and MCLEESE, *Associate Judges*, and LONG, *Senior Judge, Superior Court of the District of Columbia.*[*]

PER CURIAM: The Supreme Court of California disbarred the respondent on September 23, 2015, for defaulting in a disciplinary proceeding in which he was found to have admitted charging an unreasonable fee and failing to update his membership address. In the reciprocal discipline case before us, the Board on Professional Responsibility recommends only an informal admonition as the

---

[*] Sitting by designation pursuant to D.C. Code § 11-707(a) (2012 Repl.)

disciplinary sanction in the District of Columbia. The respondent and Disciplinary Counsel each urge us to reject the Report and Recommendation of the Board on Professional Responsibility (hereinafter "Report"), albeit for very different reasons. The respondent contends that there is no justification for disbarment in our jurisdiction, despite that result in California. Disciplinary Counsel challenges the propriety of the Board's *sua sponte* application of a recognized exception to reciprocal discipline, as set forth in the Rules of the District of Columbia Bar. That particular exception was the basis of the Board's rejection of disbarment as the appropriate discipline, even though the respondent never relied upon that exception. Additionally, Disciplinary Counsel urges us to disbar the respondent based upon a third charge that the California Bar Court had explicitly rejected as a basis for its disbarment, *i.e.*, "failure to refund unearned fees." The Bar Court determined that the failure to return the unearned fee was not adequately supported by the particular allegations that Naegele was deemed to have admitted. Disciplinary Counsel contends that the behavior underlying this charge was effectively an episode of misappropriation of client funds, presumptively requiring disbarment.

Based upon the following analysis, we exercise our discretion to accept in part the Report only insofar as the Board concludes that a recognized exception to reciprocal discipline precludes an order of disbarment. We conclude, however,

that no reciprocal discipline can be imposed for failing to maintain an updated address in the records of the California Bar because such an infraction is not actionable for any discipline in the District of Columbia. We further hold that the Board acted within its authority to recommend against disbarment based upon its *sua sponte* application of an exception to reciprocal discipline. We are persuaded that this exception must be enforced.

Where the exact choice of discipline is concerned, we conclude that the factual allegations deemed to have been admitted by the respondent, combined with the respondent's failure to cooperate in the California proceedings, are sufficient to support a 30-day suspension, with a fitness requirement, based upon respondent's admitted failure to cooperate in the disciplinary proceedings. Such discipline is typically what we would impose for similar conduct in the District of Columbia.

To appropriately address the lingering question of potential disbarment in the District of Columbia, we further exercise our discretion to remand the case to permit Disciplinary Counsel to institute an original investigation of the alleged failure to return an unearned fee, if Disciplinary Counsel chooses to do so. To consider disbarment, a remand is necessary to insure a fact finding vehicle to serve judicial efficiency and the need for an adequate factual record. To place our

rulings in a useful context, we recapitulate certain procedural and historical facts developed in California.

## I. Pertinent Background

### A. Procedural History of the Attorney-Client Dispute

The California disbarment was rooted in the respondent's representation of Raymond H. Albers, Jr. and his wife, Deanna J. Albers. They had retained the respondent in 1998 to file a civil action in the United States District Court for the Central District of California. The respondent filed the lawsuit, but it was dismissed primarily because of his clients' lack of standing to sue.

Subsequent to the dismissal of their civil action, a disagreement arose regarding the respondent's fee. The Alberses asserted their statutory right to arbitration before a three-member panel of the Los Angeles County Bar Association. The Association's arbitration entity, known as "Dispute Resolution Services," convened a hearing at which the respondent failed to appear personally but was represented by counsel. The result of the evidentiary hearing was an award issued on January 14, 2005, in favor of the Alberses. The arbitration panel determined that the civil action filed by the respondent had no merit, that the Alberses had paid him $735,481.32 in fees and costs, and that these substantial fees could have been avoided if respondent had made an effective pre-filing

investigation of his client's claims and their corresponding lack of authority to file suit. The panel concluded that a pre-filing investigation reasonably should have cost the Alberses only $8,500.00 (based upon 20 hours of work at the undisputed hourly rate of $425.00). The arbitration panel further ruled that the respondent was required to refund the Alberses the sum of $726,981.32. Furthermore, because the respondent had failed to appear personally, in violation of the applicable statute covering fee disputes, the panel also determined that the respondent would not be entitled to contest the award at a trial following arbitration.

To illuminate the arguments of Disciplinary Counsel, we summarize the nature of the civil action and why the arbitrators found that the fees billed to Mr. and Mrs. Albers were unconscionable. The Alberses retained the respondent to sue the defendants they allege had illegally sold Internet space on a certain commercial website to the parents of Mr. Albers. The arbitrators determined that one of the key reasons for the collapse of the lawsuit was the respondent's failure to investigate the case so as to learn of his clients' lack of standing. The arbitrators reasoned that the high fees could have been avoided because an adequate pre-filing investigation would have obviated the need to expend significantly more billable time.[1]

---

[1] The arbitration panel was impressed by the following facts revealing why
(continued…)

The Los Angeles County Superior Court granted the Alberses' petition to confirm the arbitration award and on February 24, 2012, entered a judgment against the respondent in the total amount of $731,831.25 (inclusive of final arbitration and court costs).  The respondent appealed this judgment, but the Court of Appeal of California affirmed the judgment in a detailed opinion of November 6, 2013.[2]  In the record before us, it is uncontested that the respondent has never satisfied the money judgment.

## B.      Basis for the California Disbarment

The disbarment resulted from the following events in the California disciplinary process.  These historical details inform our analysis of the issues now before us.

---

(…continued)

the Alberses had no authority to file their lawsuit. The judge who dismissed the original complaint found that the two defendants were in bankruptcy and that the Alberses had failed to join certain other indispensible parties.   When the respondent filed an amended complaint, it was dismissed for a simple, threshold reason, *i.e.,* the claims were not those of his clients.  The Alberses had no fiduciary authority to sue on behalf of the parents of Mr. Albers. His father was deceased, but neither Mr. Albers nor his wife was the Personal Representative of the decedent's estate (even assuming that anyone had opened an estate).  The mother of Mr. Albers was still alive, but had not retained the respondent or granted power-of-attorney to her son or daughter-in-law to file suit on her behalf.

[2]  *Albers v. Naegele*, No. B240455, 2013 WL 5945676 (Cal. Ct. App. Nov. 6, 2013) (unpublished).

On July 31, 2014, the Office of the Chief Trial Counsel of the State Bar filed a Notice of Disciplinary Charges ("NDC"). That document enumerated three specific charges or Counts: (1) "Unconscionable Fee," (2) "Failure to Refund Unearned Attorney Fees;" and (3) "Failure to Update Membership Address." Each Count was accompanied by a narrative explanation of what the respondent did or failed to do constituting the commission of each charge. The NDC specified that any failure to participate in the disciplinary process would result in disbarment. Naegele failed to respond, and the State Bar Court entered a default against him on October 1, 2014. Since the respondent took no steps to have the default vacated, the State Bar successfully petitioned the State Bar Court to disbar him by default, as permitted by Cal. Bar. R. 5.82.

One of the three Counts did not survive judicial scrutiny, despite the default. In its decision filed on April 21, 2015, the State Bar Court ordered the respondent's disbarment, but only based upon two of the three Counts: "Charging an Unconscionable Fee" and "Failure to Update Membership Address." Explaining why the disbarment could not be predicated upon the remaining charge of "Failure to Refund Unearned Attorney Fees," the Bar Court concluded that it lacked "the information necessary to determine what portion of respondent's attorney fees was earned." The Bar Court elaborated:

Count Two – the court does not find respondent culpable of willfully violating Rules of Professional Conduct, rule [*sic*] 3-700(D)(2) (failing to refund unearned fees), as alleged. The facts supporting Count Two, i.e., that respondent did not earn 'any part' of the fees received from his clients, are inconsistent with the facts found in Count One which imply that respondent committed *some degree of time and labor*, but not to the extent warranting the amount of attorney fees charged and collected. While the State Bar alleged that respondent obtained 'dismal results,' it has not been shown by clear and convincing evidence that he failed to perform legal services with competence. Based on the *conflicting* evidence, *it has not been established* that respondent did not earn *any part* of the fees received from his clients, as alleged in Count Two. Accordingly, Count Two is dismissed with prejudice.[3]

The Supreme Court of California ordered the disbarment, based upon Naegele's default.

## II. The Board's Report and Recommendation

When we issued an Order to Show Cause as to why we should not order reciprocal disbarment, both sides responded.

In his Response to Order to Show Cause, Naegele asserted three of the five recognized exceptions to the rebuttable presumption that reciprocal discipline will

---

[3] *In re Naegele*, Case No. 13-O-12380-LMA Decision and Order of Involuntary Inactive Enrollment (Cal. State Bar Ct.) (Apr. 21, 2015) (unpublished) at 5 (emphasis added).

be imposed. Under D.C. Bar R. XI, § 11(c), the five enumerated exceptions are: (1) that "[t]he procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;" (2) that "[t]here was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject;" (3) that the "imposition of the same discipline by the Court would result in grave injustice;" (4) that "[t]he misconduct established warrants substantially different discipline in the District of Columbia;" and (5) that "[t]he misconduct elsewhere does not constitute misconduct in the District of Columbia." The respondent chose to rely on only the first three of the exceptions and did not mention the fourth or fifth exceptions at all.

For its part, Disciplinary Counsel filed a Statement Regarding Reciprocal Discipline (hereinafter "Statement"). Therein, aside from opposing the three exceptions cited by the respondent, Disciplinary Counsel argued that the respondent should be disbarred in the District of Columbia purely based upon the California default as to <u>all of the original Counts</u>. In doing so, Disciplinary Counsel proffered a unique theory as to why the Board and this Court should ignore the ruling of the California Supreme Court regarding the charge that was not the basis of the disbarment.

In a nutshell, Disciplinary Counsel contends that the actual misconduct was tantamount to misappropriation of the clients' money by long-term and concerted refusal to pay the arbitration award and the related money judgment. Disciplinary Counsel argues that the refusal to pay the unconscionable fee "ripened" into misappropriation and that misappropriation is presumptively punishable by disbarment.

As a prelude to our own analysis, we summarize below the Board's assessment and recommendations regarding the respective arguments of the parties.

## A.   Board Recommendations Regarding the Respondent's Contentions

First, raising the exception recognized in Rule IX, § 11(c)(1), the respondent complained that he had been denied due process in the California disciplinary system because the California Bar Court and the California Supreme Court did not consider his challenge to the jurisdiction of the State Bar Court. The Board rejected this contention because the respondent had not provided evidence to support it, adding that the disbarment was not compromised by any other due process violations, such as lack of notice or lack of an opportunity to be heard.[4]

---

[4] Indeed, the Board noted that the respondent had "deliberately" declined to respond to the NDC and had not moved to set aside the default, knowing that it

(continued…)

Second, addressing the "infirmity of proof" exception in Rule IX, § 11(c)(2), Naegele raised several contentions, such as the fact that the money judgment was discharged in bankruptcy pursuant to a petition he filed in the year 2000.[5] Aside from this conclusory statement, the record contains no copy of the order of discharge of the Bankruptcy Court or any other verification that the money judgment was actually discharged as a debt by the Bankruptcy Court. Thus, the Board did not accept the contention that the obligation to pay the debt had been nullified as a matter of law.

The Board observed that the only argument "that even remotely approaches an 'infirmity of proof' argument is that experts had opined that he did not engage in wrongdoing." This was the respondent's allusion to expert testimony presented in a 2008 trial in which he was acquitted of criminal fraud charges in the United States District Court for the District of Columbia.[6] Nonetheless, the Board found

---

(…continued)
would result in a recommendation of disbarment.

[5] We need not elaborate on all the other assertions of "infirmity of proof" because they are subsidiary challenges to the California fee arbitration statute, the legitimacy of the California State Bar itself, and other matters not within our purview as the non-originating jurisdiction of the discipline. Other points we do not discuss because they are not relevant to our adjudication of this case.

[6] Disciplinary Counsel does not dispute that the respondent was acquitted in that case.

that the respondent had failed to substantiate this contention because he did not submit any expert reports or otherwise demonstrate exactly how any such opinions would reveal "infirmity of proof" of the disciplinary allegations. The Board's interpretation was well-founded, because the indictment reflects that the fraud did not relate in any way to overcharging Mr. and Mrs. Albers. Rather, the alleged fraud was rooted in the respondent's allegedly false understatement or concealment of his income, assets, and the value of his law practice in his bankruptcy petition filed on March 29, 2000.

The Board also rejected the "infirmity of proof" exception because the State Bar Court "did not simply recommend [respondent's] disbarment because he failed to participate in the disciplinary proceeding." Noting that the California fact-finding was not the result of a proverbial rubber stamp, the Board observed:

> After reviewing the facts alleged and the finding that the facts deemed admitted established that Respondent charged an unconscionable fee, the State Bar Court found that those facts did *not* establish that Respondent failed to refund an unearned fee because the facts did not prove the amount of any unearned fee. April 21, 2015 Order at 5. Given the State Bar Court's careful consideration of the evidence, we do not find an infirmity of proof.

Third, the Board rejected the contention that the sanction of disbarment would result in a "grave injustice." The Board gave no weight to the respondent's three arguments supporting his theory of "grave injustice," *i.e.*, that he had enjoyed

a long and distinguished career without prior discipline, that he had worked "tirelessly" for his clients and received "only a fraction" of his fee, and that disbarment would impair his ability to earn a living. Considering these factors, the Board found that none constitutes a "grave injustice" and that disbarment has been imposed on other lawyers whose circumstances were the same as those alleged by the respondent.

### B.  Board Recommendations Regarding Contentions of Disciplinary Counsel

Responding to our Order to Show Cause, Disciplinary Counsel contends that this Court should fashion its own interpretation of the facts underlying the charge of "failure to return an unearned fee" in order to fit those facts into the category of intentional or reckless misappropriation. In this jurisdiction, intentional or reckless misappropriation presumptively requires disbarment. *In re Dixon*, 763 A.2d 730, 732 (D.C. 2000).

Alluding to facts deemed admitted in California only because of the default, Disciplinary Counsel states:

> The misconduct found in California does not warrant substantially different discipline in this jurisdiction. Even though the California Court declined to sustain the charge that Respondent had not earned *any part* of the $735,481.25 he had taken as his fee, it is indisputable that a substantial portion of that fee had been unearned . . . .

> Thus, Respondent took a fee of $735,481.25 no later than March 2004, and by January 2005, an arbitrator had ruled that Respondent owed his client a refund of at least $726,981.25 constituting the unearned portion of that fee. Over the past 11 years, Respondent has not refunded any portion of that unearned fee. At a *minimum*, a failure to pay an attorney-client arbitration award, coupled with frivolous appeals and other filings, would warrant a lengthy suspension with reinstatement conditioned upon disgorgement of the unpaid arbitration award with interest . . . . The facts found in California would support a finding in this jurisdiction that Respondent's willful failure to refund an unreasonable and unearned fee for over 11 years would ripen into intentional misappropriation, for which disbarment would be the appropriate sanction.[7]

To grapple with the arguments of Disciplinary Counsel, the Board globally examined whether the face of the record did or did not yield support for any of the exceptions to reciprocal discipline, not merely the three exceptions that the respondent chose to discuss. The Board stated, "[a]lthough none of Respondent's arguments have [*sic*] any merit, that does not end the Board's inquiry because Rule XI, § 11(e) provides that identical discipline should not be imposed if one of the grounds set forth in § 11(c) appears 'on the face of the record.'"

In making its analysis of the fourth exception, the Board found that "it is clear on the face of the record that Respondent's misconduct (charging an

---

[7] Statement at 6-7 (emphasis in original).

unreasonable fee) would not have resulted in disbarment here, and therefore [we] recommend that identical reciprocal discipline not be imposed, and that Respondent instead receive an informal admonition." The Board analyzed the two core factors necessary to this exception: whether the conduct in question would have resulted in the same sanction in the District of Columbia and if not, whether the difference between the two is substantial. First, the Board concluded that in the District of Columbia an informal admonition is the typical sanction for charging an unreasonable fee unaccompanied by other Rule violations. The Board relied upon a decision of this Court in which we stated that "sanctions for charging an unreasonable fee range 'from informal admonition to suspension,' and suspension is usually imposed only in combination with violation of other rules." *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013) (quoting *In re Shaw*, 775 A.2d 1123, 1125 (D.C. 2001) (per curiam)).

Secondly, the Board determined that the difference between disbarment and an informal admonition is substantial. The Board noted that a lawyer in the District of Columbia "who has been defaulted is not disbarred for engaging in any misconduct if the sanction for that misconduct is not disbarment. Instead, a defaulted respondent who has engaged in misconduct receives a sanction that is consistent with that imposed for comparable misconduct." Thus, the Board implicitly found that it would be unfair to disbar an attorney based upon a default

procedure not consonant with our own and that we should not to "foster a tendency toward inconsistent dispositions for comparable conduct."[8]

Finally, the Board explained why it would not adopt the misappropriation theory as a way to craft a reason for disbarment, where the foreign jurisdiction's basis for reciprocal disbarment otherwise does not exist. As a threshold matter, the Board emphasized, "pursuant to D.C. Bar R. § XI, 11(e), we are bound to accept the facts found in California. Because the foreign discipline was not based on a failure to refund unearned fees, we are reluctant to recommend a sanction based on the failure to refund unearned fees." Importantly, the Board added, "[f]ailure to return an unearned fee is prosecuted as a Rule 1.16(d) violation, not a misappropriation." The Board relied upon this Court's recognition that when the District of Columbia Bar's Attorney-Client Arbitration Board ("ACAB") issues an award in favor of the client in a fee dispute, the result is that the "attorney is required to give this sum to the client under Rule 1.16(d)." *In re Martin*, *supra*, at 1047. The proposal for discipline is not the process by which problems of "unearned" fees are resolved under the Rules of the District of Columbia Bar. The Board added that Disciplinary Counsel cited no cases in which the failure to return an unearned fee was deemed by the Board or by this Court to have "ripened" into

---

[8] Rule XI, § 9(h)(1).

misappropriation.

### III. Challenges to the Board's Report and Recommendation

### A. Issues Raised by Disciplinary Counsel

In its brief, Disciplinary Counsel contends that the Court should adopt the Board's recommendations on all but one charge. In short, however, Disciplinary Counsel emphasizes that an informal admonition is not enough of a sanction for what this attorney actually did to his clients. More specifically, Disciplinary Counsel urges this Court to disbar the respondent based upon the behavior underlying the charge of "Failure to Return an Unearned Fee" and the respondent's continuing refusal to repay his clients.

Stopping short of accusing the Board of acting in an *ultra vires* manner, Disciplinary Counsel complains:

> The disciplinary system should not go out of its way to invoke exceptions to reciprocal discipline that were neither raised by the attorney nor Disciplinary Counsel. At most, the Board should simply satisfy itself that 'no obvious miscarriage of justice would result' from the imposition of identical discipline, as it would in an unopposed reciprocal matter.

In its brief, Disciplinary Counsel has stated that if this Court does not order

the respondent's disbarment, we should "in the alternative, suspend Mr. Naegele from the practice of law with a fitness requirement that will protect the public in light of his disregard for the disciplinary process and refusal to honor a sizable arbitration award in favor of his clients."  In the Statement Regarding Reciprocal Discipline, Disciplinary Counsel indicated, "At a *minimum*, a failure to pay an attorney-client arbitration award, coupled with frivolous appeals and other filings, would warrant a lengthy suspension with reinstatement conditioned upon disgorgement of the unpaid arbitration award with interest."

### B.     Issues Raised by the Respondent

Before this Court, the respondent raised several points in his brief.  For the sake of brevity, we will not repeat all of them or repeat those that are not pertinent to our ultimate disposition.  He chiefly takes issue with the way in which Disciplinary Counsel described or labeled the events culminating in the arbitration award.  The respondent also disputes the legitimacy of the default, arguing that he appeared through his legal counsel who challenged the legality of the arbitration process itself, even though the respondent did not personally attend the arbitration hearing.

The respondent argues that Disciplinary Counsel is "grasping at straws" in complaining about the Board's reliance upon an exception that he did not cite.

Naegele states in his brief that "at most" the Court should impose discipline that is substantially different from disbarment, "recognizing that by the time a decision is rendered with respect to the matters before this Court, *at least three years* will have passed during which the Respondent has been suspended already from the practice of law, which far exceeds the punishment associated with an 'informal admonition.'"[9]

## IV. Analysis of the Board's Recommendation

We address first the scope of the Board's authority to make a recommendation based upon its *sua sponte* consideration of an exception to reciprocal discipline. We then turn to the merits of its recommendation for a particular type of discipline and the reasons why a remand is necessary.

### A. Authority of the Board to Consider Sua Sponte Any and All Exceptions to Reciprocal Discipline

We find that the Board committed no legal error in basing its recommendation on an exception that was not cited or advocated by the respondent. Consistent with our decisions in earlier cases, we hold that the Board is entitled to render a recommendation based upon its own analysis of the options

---

[9] Brief of Respondent at 47 (emphasis in original).

that it finds applicable to the case before it. This conclusion is based upon two important elements.

First, as the Board correctly observed, this Court had already established that the Board has authority to consider any and all exceptions to the presumption of reciprocal discipline. The Board cited, *inter alia*, our decision of *In re Gardner*, 650 A.2d 693 (D.C. 1994). In *Gardner,* we stated that "it is appropriate for the Board to consider preliminarily whether *any* of the exceptions to D.C. Bar R. XI, § 11(c) apply." *Id*. at 696 (emphasis added). A "preliminary" inquiry would certainly embrace a focused review of the record to pinpoint a possible reason not to impose reciprocal discipline. We do not see the preliminary review in this case to be a demonstration of bias in favor of the respondent, as Disciplinary Counsel implies.

Second, we stated in a post-*Gardner* reciprocal discipline decision that Rule XI, § 11(f)(2) "grants the court independent authority to impose different discipline if it finds 'on the face of the record . . . by clear and convincing evidence' that an exception applies. *Pursuant to the same authority*, the Board can recommend a different sanction where it believes an exception applies." *In re Spann*, 711 A.2d 1262, 1263 (D.C. 1998) (emphasis added). Clearly, neither this Court nor the Board is obligated to stay its hand and not weigh the merits of an exception until

the respondent cites that particular exception. The complaints of Disciplinary Counsel regarding the Board's reliance upon the exception in § 11(c)(4) have no merit.[10]

**B.      The Merits of the Recommendation for an Informal Admonition**

In our *de novo* review of the Board's Report and Recommendation, we conclude that the Recommendation is sound but only because a recognized exception to reciprocal disbarment must be applied. However, we do not accept the recommendation to impose only an informal admonition, to cover all of the facts deemed admitted by the default.

First, we pause to explain why we accept the Board's Report regarding the soundness of the two charges that were not dismissed by the Bar Court, but which were still the subjects of Naegele's default. We then consider how to approach the choice of sanction to impose in our jurisdiction and the issue of potential disbarment in the District of Columbia.

*The Charge of "Unconscionable Fee."*   We accept the Board's recommendation that the respondent be sanctioned in some way short of

---

[10] Disciplinary Counsel does not assert that the Board's recommendation has resulted in any prejudice to its own ability to prosecute any type of alleged misconduct by this respondent.

disbarment for the misconduct of charging an "unconscionable fee." The record discloses no basis for rejecting the respondent's liability for this misconduct based upon the determination of the California Bar Court.

We agree with the Board that a lawyer would not be disbarred in the District of Columbia for the misconduct of "Charging an Unreasonable Fee."[11] This is not a close question. Charging too much for professional services is behavior that is materially different from stealing or harboring money that belongs to the client. The Board correctly recommends that this charge cannot be the basis for reciprocal disbarment of this respondent.

*The Charge of "Failure to Update Membership Address."* Neither side has addressed the proper role of this particular California misconduct in the imposition of reciprocal disbarment.

In its Report, the Board only mentioned parenthetically, "[w]e have been unable to locate any cases in which a respondent was disciplined for failure to maintain a current address with the Bar. Disciplinary Counsel did not cite any such cases in its Statement Regarding Reciprocal Discipline." The Board's Report

---

[11] As a practical matter, we do not draw a distinction between the phrases "unreasonable fee" and "unconscionable fee." They are two ways of labeling the same issue.

did not identify any basis for our imposing discipline for respondent's failure to update his address in the records of the California Bar, even if the informal admonition is intended to cover this charge as concurrent discipline.

We are convinced that there is no justification for including the failure to update the California address as any basis for public discipline, concurrent or otherwise. We draw this conclusion for two reasons. First, that particular infraction is an administrative issue unique to the respondent's relationship with the Bar of California. It is not the business of the District of Columbia Court of Appeals to enforce foreign membership requirements that are not identified as ethical violations or misconduct in our own Rules. Second, since the Rules of the District of Columbia Bar do not provide for discipline based on this kind of administrative error, we are persuaded that the exception under § 11(c)(5) clearly applies to this charge, as it did to the other charge. No discipline will be imposed for this alleged misconduct.[12]

*The Charge of "Failure to Return an Unearned Fee."* Disciplinary Counsel has conflated overcharging with the separate misconduct of misappropriation of

---

[12] We pause to discuss this charge from a foreign jurisdiction, because even if it is viewed as merely a concurrent or unimportant basis for the discipline, we seek to forestall inclusion of such charges in a lawyer's District of Columbia disciplinary record.

client funds. We have defined misappropriation as "any unauthorized use of client's funds entrusted to [a lawyer], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not [she] derives any personal gain or benefit therefrom." *In re Pierson*, 690 A.2d 941, 947 (D.C. 1997) (citing cases). In prior decisions examining the latter category, we have categorized an attorney's retention of client funds as "ripening" into misappropriation only where the lawyer was unquestionably aware that he or she had no right to have the client funds under his or her control <u>and</u> where that lawyer refused to relinquish the funds when ordered to do so. *See In re Utley*, 698 A.2d 446, 449 (D.C. 1997) (ripening into misappropriation "because of the unreasonably long delay in repaying a duplicate fee she knew was unauthorized"); *In re Addams*, 579 A.2d 190, 199 (D.C. 1990) (disbarment for misappropriation occurring when a lawyer took money from a client's escrow account to pay his own fees and then presented a false accounting to the client). In *Utley* and *Addams*, the question of whether the lawyer had performed enough work to justify the self-payment was not the issue being litigated. Neither lawyer in these cases quibbled about whether the money in question belonged to the client.[13] All of these factors demonstrate that

---

[13] In *Uttley*, the client was actually a ward of the court in a conservatorship, where the lawyer was the court-appointed fiduciary. She was already duty-bound to protect the ward's assets for the ward's benefit, strictly requiring prior judicial authorization before accepting compensation.

these cases are clearly distinguishable from the present case and do not provide an easy way to resolve the issue of reciprocal disbarment.

We should emphasize that a true reciprocal action by our Court must be based upon facts that were accepted by the highest court of the foreign jurisdiction, whether by its explicit fact-finding or by its default process. In our reciprocal discipline matter, we accept findings made in connection with adjudication of misconduct by judicial tribunals in other states. *In re Shearin*, 764 A.2d 774, 777 (D.C. 2000). Moreover, making new fact-finding at this juncture would be at odds with the principle of not giving preclusive effect to findings made in a non-disciplinary proceeding in the originating jurisdiction. *See In re Ditton*, 954 A.2d 986, 991 (D.C. 2008).

For all of the reasons set forth above, we decline to disbar the respondent and we accept the recommendation of the Board that no discipline be imposed in this reciprocal proceeding for "Failure to Return an Unearned Fee."

**C.     The Choice of Discipline and the Potential for Disbarment in the District of Columbia**

*Choice of Discipline.* Having applied an exception to reciprocal disbarment, we must grapple with the recommendation of Disciplinary Counsel that we should impose a suspension with a fitness requirement for reinstatement, as an alternative.

Ultimately, that approach has merit, but for reasons that are not identical to the justification urged by Disciplinary Counsel.

In short, Disciplinary Counsel argues that a suspension is the minimum appropriate sanction for two reasons: the respondent's refusal to personally participate in the disciplinary proceedings in California and because he has failed to pay the money judgment awarded for the excessive fee that he charged.

We are mindful that the California Bar Court did not recommend this disbarment by weighing the relative magnitude of the respondent's actions or by pinning the disbarment on one charge over another. Rather, the disbarment was ordered because of the default and because the default itself operates as an admission of violations of Bar rules. Moreover, the Rules of the California Bar permit disbarment merely because of a default as long as there was a fair process wherein the allegations deemed admitted based on the default "would warrant the imposition of discipline." Cal. Bar R. 5.85(F) (1)(d); *see also* Cal. Bar R. 5.80(A) & (D), 5.82(4). For this reason, we do not lapse into retrying the facts as if we are imposing original discipline. However, we do agree with Disciplinary Counsel that we are not bound by the labels of the charges that underlie the findings of the California Bar Court. We can and should look closely at the record, to identify *uncontested* evidence of conduct that would support a sanction greater than an

informal admonition.  We certainly find such facts in the respondent's refusal to comply with the requirement of attending the fee dispute arbitration hearing and in complying with the directive to produce the client file, all of which is exacerbated by his default before the California Bar Court.

In the District of Columbia, the failure to cooperate with Disciplinary Counsel is its own form of misconduct, because of the deleterious effect of withholding potentially important evidence and the failure to respect the investigatory and fact-finding authority vested in the Board on Professional Responsibility.  In the District of Columbia, when an attorney fails to respond to a request for information from Disciplinary Counsel without asserting in writing the grounds for such refusal and fails to produce a client file pursuant to an order of the Board, that attorney has violated Rule 8.4(d) of the D.C. Rules of Professional Conduct, as well as Bar Rule XI, § 2(b)(3) and (4). Typically, the sanction for such misconduct is a 30-day suspension, with a fitness requirement for reinstatement. *See In re Thompson*, 195 A.3d 64 (D.C. 2018) (failure to respond to requests for information during an investigation); *In re Steinberg*, 864 A.2d 120 (D.C. 2004) (failure to respond to multiple requests for response to charges).

The uncontested facts of record demonstrate that the failure to cooperate with the requirements of the arbitration process was not a minor matter.  If

anything, the respondent's characterization of that fact-finding process reflects his defiant attitude towards the California disciplinary system. In his brief, he asserts dismissively that the complaint brought to the fee arbitration system was no more than "a pretext to avoid foreclosure of the Albers' note and deed of trust by a third party." This is an allusion to the failure of the Alberses to pay the full, exorbitant fee and their apparently desperate attempt to raise the money through financing secured by their home. The respondent has never denied that he refused to comply with the requirement of personally appearing before the arbitration panel.

Importantly, the respondent has never disputed the observations of the arbitration panel on the negative effect of his failure to appear personally on his own behalf. In the unique circumstances herein that include the failure to deny his failure to participate in the disciplinary process, we can rely on the content of the arbitration award as it relates to that failure. We can do so without violating the principle of not giving preclusive effect to findings in non-disciplinary proceedings, because the fee arbitration was a proceeding in which the respondent was reasonably on notice that the factual findings of that tribunal could be used for Bar discipline; they were used as such. The allegations in the arbitration are classically the kinds of allegations that evolve into explicit charges before a judicial disciplinary body. Indeed, the allegations of the Alberses were specifically incorporated into the NDC to which the respondent defaulted. Thus, there is no

unfairness in basing discipline upon all of the respondent's non-compliance with all facets of the disciplinary proceedings. *Compare In re Maxwell*, 798 A.2d 525, 529 (D.C. 2002) (declining to impose discipline greater than the discipline imposed by the originating jurisdiction, where the supporting facts came only from a civil action that did not put the attorney on notice of potential, resulting disciplinary proceedings).

Noting that Naegele had been served with a statutory Notice to Appear in Lieu of Subpoena, the arbitration panel wrote in pertinent part:

> Previously, on a Motion by the Albers, the arbitration panel ordered that Respondent Naegele produce the Albers' file in regard to the arbitration proceeding. This was never done.
>
> At the time of the arbitration hearing, Attorney Strauss appeared on behalf of Respondent Naegele. Strauss made an opening statement and final argument, and cross-examined the Albers. He presented a written statement by Naegele and a copy of the fee agreement. He denied knowledge of the whereabouts of the Albers file, and why Naegele failed to appear for arbitration, except to say that Naegele continued to contest the jurisdiction of the arbitration process.
>
> It would have been extremely helpful to the panel to have Naegele's direct testimony as well as his testimony under cross-examination, and beneficial to the panel to have Naegele produce the entire file for which he billed the Albers $762,880.52 in prosecuting the actions to a dismissal on technical grounds. These grounds for dismissal could have been established early on, and the

Albers could have been properly advised.

> Further, the conduct of Naegele upon learning of the decision of John S. Chang, Presiding Arbitrator for State Bar of California Office of Mandatory Fee Arbitration, that this panel did have jurisdiction to adjudicate the fee dispute between Albers and Naegele, in not appearing as he was compelled to do and in refusing to produce the Albers file as he was required to do by Business and Professionals Code 6200 applicable to the arbitration hearing, was willful [*sic*].

Without doubt, the respondent's failure to personally appear and produce the client file had a negative impact on the fullness of the record and the panel's access to important, first-hand information. The impact continued to the judicial proceedings. At the Bar Court level, the respondent's obstructive attitude is reflected in that Court's dismissal of one charge, due to the uncertain quality of the evidence that could have been clarified with input from the respondent. Despite having multiple contacts with the Office of the Chief Trial Counsel of the California Bar, *after* being served with the Notice of Disciplinary Charges, the Respondent still failed to assert any defense or challenge of any kind before the California Bar Court. His consistent approach is to argue that he owed nothing to the disciplinary process as a member of the Bar.

We have always emphasized that our proper role in reciprocal discipline is to impose discipline that comes as close as possible to the discipline imposed by

the originating jurisdiction. Although we are precluded from disbarring the respondent because of one recognized exception, that does not mean that we have no obligation to impose the appropriate discipline fairly supported by the record – short of disbarment. We conclude that the uncontested facts developed in the overall California disciplinary process fully support a 30-day suspension with a fitness requirement as a condition to re-admission.

*Potential for Disbarment.* Our decision to accept the Report of the Board does not mean that the respondent is permanently shielded from disbarment. We do not ignore the troubling nature of what the respondent allegedly charged his clients. However, what is important at this point is specifying the correct and efficient legal process by which the facts can be verified with due process for the respondent.

For two pivotal reasons, we conclude that a remand is necessary, and we will order a remand pursuant to our authority under Rule XI, § 9(j). First, we are not a trial court. Fact finding should not originate in the highest court of a jurisdiction. Thus, for reasons of judicial efficiency, we are best able to perform our proper role when we have the benefit of detailed recommendations of the Board, based upon the assessment of evidence and witness credibility by a Hearing Committee. This is precisely what is required under our own Rules.

However, Disciplinary Counsel urges us to ignore and overrule the explicit rejection by the California Bar Court of the "failure to return unearned fee" charge – and to convert that charge into an allegation of misappropriation – and to do so for the first time on appeal. Thus, Disciplinary Counsel plainly seeks to litigate before us the factual sufficiency for a misappropriation charge that has never been petitioned before the Board on Professional Responsibility.[14] This is impermissible in the realm of what is truly "reciprocal." A remand, however, would provide Disciplinary Counsel with a fresh and fair opportunity to create a sound factual record in support of any charge that would normally justify disbarment.

A remand proceeding can directly address what the California Bar Court implied as a *quantum meruit* issue. The Bar Court acknowledged that the respondent may have earned some part of the amount in dispute, above the putative floor of $8,500.00. Finding that a lawyer is entitled to a minimal or token fee

---

[14] Disciplinary Counsel presents a number of new factors that it believes demonstrate "misappropriation" of client funds, although these factors were never a part of the arbitration proceeding or the considered analysis of the California Bar Court. They include, but are not limited to: (1) the respondent's action of filing a 2003 civil action against Mr. and Mrs. Albers in the District of Columbia, unsuccessfully accusing his former clients of failing to pay their non-refundable retainer, among other allegations; and (2) the respondent allegedly evading service of the clients' complaint to collect the arbitration award. These new considerations should be subject to appropriate fact-finding by a Hearing Committee.

under the rubric of *quantum meruit* is still a decision that requires weighing of facts and may require a determination of witness credibility as between lawyer and clients. This is a fact-sifting process that is clearly under the initial aegis of the Board on Professional Responsibility.

Likewise, Disciplinary Counsel is free to petition an explicit allegation of misappropriation, on remand. For the sake of completeness, we are constrained to point out why we cannot independently leap to the conclusion that the entire judgment sum was "misappropriated" from the Alberses. The following matters further illustrate why the facts of misappropriation require thorough evidentiary exploration.

First, just as the California Bar Court emphasized, there is no record as to what legal work performed by the respondent may have been compensable. For example, there are no facts of record regarding the work he performed to craft and file the Amended Complaint in an attempt to remedy defects in the original Complaint filed on behalf of the Alberses. The arbitration panel did make findings of fact on this subject. It remains a dangling question.

Second, the reasons for the substantial passage of time without payment of the judgment may not be as sinister or extreme as Disciplinary Counsel suggests. Significantly, Disciplinary Counsel has not addressed the respondent's assertion

before us that "[*a*]*ll* claims by the Albers against the Respondent were discharged in his bankruptcy in the U.S. Bankruptcy Court for the District of Columbia . . . ."[15] This is a factual matter that was not developed on the present record. A Hearing Committee, rather than our Court, is best equipped to sort out whether the 2012 money judgment was actually identified in the bankruptcy petition and whether the order of discharge from the Bankruptcy Court extinguished the debt that is traceable to the 2005 arbitration award. Only through a remand can a Hearing Committee and the Board consider the entire mosaic of what the repayment obligation really is.

Third, the facts developed on remand may or may not support the sanction of suspension, even if the facts do not support disbarment and/or disgorgement based on the failure to return the Alberses' fee. The orderly recommendation of a sanction requires a factual record justifying whatever sanction is necessary to protect the public. Indeed, any proposal for suspension should be accompanied by a logical explanation of a corresponding fitness requirement, if any.

Finally, if Disciplinary Counsel chooses to initiate an original discipline proceeding, the respondent will have important due process rights under our

---

[15] Response of Respondent to the Order to Show Cause at 12 (emphasis in original, footnote omitted).

default Rules if he again fails to defend himself. In the District of Columbia, when a member of the Bar defaults in responding to a petition, Disciplinary Counsel may file a motion for entry of a default before the Hearing Committee. Importantly, the default alone cannot be the basis for the Board to recommend discipline or a basis for this Court to impose discipline. Our Rules require the presentation of *ex parte* proof of the evidence supporting the sanction requested by Disciplinary Counsel. Rule XI, § 8(f) provides in pertinent part:

> [T]he motion must be supported by sworn proof of the charges in the specification and by proof of actual notice of the petition or proper publication as approved by the Court. The Hearing Committee Chairperson may enter an order of default and the petition shall be deemed admitted subject to *ex parte* proof by Disciplinary Counsel sufficient to prove the allegations, by clear and convincing evidence, based upon documentary evidence, sworn affidavits, and/or testimony. Disciplinary Counsel shall notify the attorney of the entry of a default order.
>
> An order of default is limited to the allegations set forth in Disciplinary Counsel's petition and shall be included in the Hearing Committee's report and recommendation filed with the Board. The Hearing Committee shall issue its report and recommendation based upon the documentary evidence, sworn affidavits, or testimony presented by Disciplinary Counsel, and the report shall set forth proposed findings of fact and conclusions of law.

## V.    Conclusion

To summarize, the Board's Report regarding the applicability of the

exception to reciprocal discipline under Rule XI, § 11(c)(4) is accepted. The Board's recommendation for the imposition of an informal admonition is hereby rejected in favor of the imposition of a thirty-day suspension, with a fitness requirement for reinstatement. The suspension is hereby ordered, effective as of the date of the mandate herein. No discipline shall be imposed for the misconduct of "Failure to Update Membership Address." No discipline will be imposed for the charge of "Failure to Return an Unearned Attorney Fee." This case is otherwise remanded to the Board on Professional Responsibility for proceedings consistent with this decision.

*So ordered.*